# Wright *versus* Cumpsty.

*Contradiction of Witness by Record of Quarter Sessions.—Judgment not reversed for harmless Error. — Witness contradicted by his former Testimony.—Defective Workmanship, Deduction for in Assumpsit.— Partnership does not result from single joint Transaction.*

1. Evidence of statements contradictory to what a witness has testified to, on the trial of a cause, are inadmissible to discredit him unless he is first examined as to such statements.

2. Where a witness, when asked his reason for leaving a certain county, answered, that he left to engage in his business elsewhere, the records of the Court of Quarter Sessions of that county, showing the finding of two bills of indictments against him for misdemeanors, are not admissible to show that he gave a false reason, where he had not been asked whether such indictments had been found: for the question was about irrelevant matter, which could not be contradicted, and the records of the indictments as offered, did not contradict the witness.

3. But though the admission of the records was error, yet where the testimony of the witness was not beneficial to the defendant or to his defence, plaintiff in error cannot complain that he was injured, and the error being innoxious, the Supreme Court will not reverse therefor.

4. Evidence of what a witness had testified to on a former trial between the same parties, and upon substantially the same subject-matter, is admissible in a subsequent suit between them, where the witness is out of the state at the time of the trial, though the first action was replevin, and a stranger to the contract involved in the controversy was included therein.

5. Where, in an action for materials furnished, and work and labour done for a steamboat, the declaration was for a *quantum meruit*, and no special contract was shown, so as to bring the case within the rule of actions on entire contracts, where entire performance or its equivalent must be alleged, and followed by proof showing complete performance, or dispensation therewith by the party entitled to performance; compensation may be allowed the defendant for the defective workmanship of the plaintiff by a deduction from the amount claimed; and the charge of the court that there might be "a deduction in proportion as the work failed to answer the purpose" was not error.

6. Where parties agree to engage in a single transaction or venture for the purpose of making profits, their agreement does not amount to a partnership in such manner as to compel the partner seeking his share of the profits, or

[Wright v. Cumpsty.]

payment for work and labour done and materials furnished, in excess of his proportionate share of the venture from the other partner; to resort to an action of account render, but he may recover in *assumpsit*: therefore it was not error to allow the jury, in the action of *assumpsit*, to settle the rights of the parties as between themselves. Where the partnership, if it existed, was in a single transaction, and there were no debts due by or in favour of the firm, the plaintiff in such a case could recover in the equitable action of *assumpsit* that which would make him equal with his copartner.

7. The doctrine of recovery on an implied promise in the case of a single partnership transaction or joint adventure, instead of requiring a balance struck and an express promise to pay it, laid down in Gilles v. McKinney, 6 W. & S. 79; Galbraith v. Moore, 2 Harris 86; Van Amrindge v. Ellmaker, 4 Barr 281, and Borrell v. Borrell, 9 Casey 492, followed and approved.

ERROR to the Common Pleas of *Armstrong county*.

This was an action of *assumpsit* brought to June Term 1858, by Charles Cumpsty against Joseph K. Wright, to recover for materials furnished and for work and labour done by plaintiff and his hands, in the construction and erection of the steamboat Nebraska, during the spring and summer of 1854. The plaintiff below filed a *narr.* for work and labour done, materials furnished, money expended, and specially for damages suffered by defendant below in failing to pay the debts of said boat, whereby the plaintiff was harassed and damnified, accompanied with a bill of particulars, &c. To this the defendant below pleaded *non assumpsit*, set-off, payment with leave, &c., accompanied with bill of particulars, and specially, that plaintiff and defendant were partners in the entire transaction of the building, construction, and running of the steamboat Nebraska. The plaintiff below alleged that the contract between himself and defendant was, that he, the plaintiff, was to put the engine into the steamboat Nebraska, and if it did not answer the purpose intended, that the plaintiff was to have the privilege of taking it out, and in that event, for all other work done beyond the construction of the engine, he was to receive a fair compensation. But if the engine did answer the purpose intended, then he was to have an interest in the boat to the extent of the value of the engine. The defendant contended that all the work done by Cumpsty, and all the materials furnished, was for an interest in the boat, to the extent of the one-third of its entire value, and that they were partners in the proportions of one-third and two-thirds.

The boat was completed some time in September, 1854, Mr. Cumpsty putting in the engine and erecting the other machinery. In October, the boat was run down the Allegheny river to Pittsburgh, and after considerable effort to make her successful on that river and on the Monongahela, she was brought back to Kittanning, in November of the same year. The engine did not answer the purpose intended, and the whole adventure seemed likely to prove a failure.

A short time after the arrival of the boat at Kittanning,

[Wright *v.* Cumpsty.]

Cumpsty was about to take out part of the machinery, when some difficulty occurred between the parties. The engine was subsequently placed in the warehouse of P. Mechling, whereupon Cumpsty issued a writ of *replevin* at No. 86, September Term 1855, and obtained possession thereof, and, on trial, a verdict in his favour.

On the 19th March 1855, a suit was commenced by Reuben Briny, one of Cumpsty's employees, and a labourer on the boat, against Wright and Cumpsty, for work done on the boat, who obtained a judgment before Esquire Heiner, on which an execution was issued, and the boat Nebraska levied upon and sold to Charles Johnston for $46.

The plaintiff gave evidence to prove that all the work done by Cumpsty, was under the directions, and according to models furnished by Wright. The defendant gave evidence to prove that the mechanical part of the machinery erected by Cumpsty, was very imperfectly done, and that the fault was in the construction, and not in the plan or models.

On the trial of the case below, the defendant offered in evidence the testimony of Jacob Stein, taken before a commissioner in the state of Alabama, on interrogatories and cross-interrogatories duly filed, for the purpose of proving the partnership between the parties, and also some declarations made by a witness of plaintiff. In the fifth cross-interrogatory of plaintiff, the witness was asked, " Were you a witness in the former suit between Cumpsty and Wright, about the engine? What business do you follow now, and why did you leave Armstrong county?" To which the witness answered: "I was; I am a confectioner by trade, am now doing the baking and attending to the dining-room at F. Sulzner's Hotel in this place (Athens, Limestone county, Alabama). I left Armstrong for the purpose of resuming my business of confectioner, or on a steamboat in trade on the lower Mississippi river, and in New Orleans, where I can do better than I could there, and where I claim as my home." In the rebutting testimony of plaintiff below, the record of Armstrong county Quarter Sessions, Nos. 29 and 32, September Sessions 1860, showing indictments against Jacob Stein for riot and assisting prisoners to escape, was offered in evidence, to impeach or contradict the witness. This was objected to because the witness's attention was not called by the interrogatory to this record, as a reason for his leaving the county, and it was therefore not proper to contradict him, nor was it evidence to impeach his veracity. The court below overruled the objection, and admitted the evidence.

The plaintiff also, in his rebutting evidence, offered the notes of the testimony of Dr. Burleigh, as taken by his honour, Judge BUFFINGTON, in the case of Charles Cumpsty *v.* Joseph K. Wright and P. Mechling, in the *replevin* for engine, No. 86, Sep-

[*Wright v. Cumpsty.*]

tember Term 1855, to prove that the boat was purchased by Johnston, at the constable's sale, for Wright, and also to affect Johnston's testimony. This was objected to, because not taken between the parties in the case, and because Dr. Burleigh is a permanent resident of Armstrong county, and his family is now residing there, he having left on temporary business, a short time before trial. But the objection was overruled, and the testimony admitted.

The plaintiff, in rebutting, offered also to prove, by William Blakely, that process was issued against Stein about the time the indictments above mentioned were found; that Stein had asked the witness if there would be a prosecution of that kind instituted, and was answered in the affirmative, and that about that time Stein had disappeared, and had not been heard of by witness since.

This testimony was also objected to for the reasons above given, but was admitted by the court below, under exception for defendant.

The plaintiff requested the court to charge the jury,

1. If the jury believe that the engine was built, and the other work done by the plaintiff, under the direction of the defendant, and from his models and plans, in that event defendant could not hold the plaintiff responsible for defects arising from his own plans and models or his directions.

2. That, as between the parties, there might be a contemplated partnership to the extent of the engine alone, and if so, the plaintiff would be entitled to recover his other labour and materials of the defendant in this suit.

The court below (BUFFINGTON, P. J.), answered these points in the affirmative, and instructed the jury as follows:—

"The first question for the jury to examine is, what was the contract between these parties? The plaintiff Cumpsty alleges that he was to furnish the engine, estimated at $500, and, if successful, he was to have an interest in the boat to that extent; if not successful, he was to take it out as his property. And further, all work done over and above the construction of the engine alone was to be paid for by Dr. Wright.

"On the other hand, Dr. Wright contends that all the work done by Cumpsty was for an interest to the extent of one-third in the boat, and that they were partners in the proportion of two-thirds and one-third.

"If the jury believe that the only interest Cumpsty had was the engine, then he would be entitled to a fair compensation for the residue of his labour and materials furnished.

"The defendant alleges that the work was unskilfully done. As this is a claim for a just compensation for mechanical skill, it ought to be done in a mechanical and skilful way, with reference to the object intended; *otherwise there ought to be a deduction in*

[Wright *v.* Cumpsty.]

*proportion as the work failed to answer the purpose.* The plaintiff, however, alleges, in reply to this, that all was done under the direction and according to the models furnished by Dr. Wright; if so, and the fault was in the model and not the workmanship, the defendant would have no right to complain. If the jury believe there was no partnership, then they will estimate the value of the plaintiff's labour and materials. Then turn to the defendant's account and proofs, and ascertain the amount the defendant is entitled to as set-off, and strike the balance.

"If, however, the jury should believe there was a partnership, how stands the matter then? The engine itself is not now in the controversy. After it was taken out of the boat Cumpsty obtained it on a *replevin*, and still has it. The hull of the boat was sold by the constable for $46, and was bought by Charles Johnston. Whether he bought in his own right, or was the mere agent of Dr. Wright, is for the jury. It is probable the jury may believe it was bought for Wright, and with his money. *If so, then the right of the owners would remain as before.* It was afterwards sold by Dr. Wright to Dr. Burleigh for $1000. The entire proceeds, of the adventure then made available to the parties would be the value of the engine got by Cumpsty, and the proceeds of the hull got by Wright. If the engine as got by Cumpsty was worth $500, then the entire proceeds would be $1500—two-thirds to Wright, and one-third to Cumpsty—and as they just got that amount out of the proceeds, it would seem, if the evidence is believed and this the correct view of the subject, that the plaintiff had got all he was entitled to. *If, however, the engine as got by Cumpsty was worth less than the one-third of the entire proceeds, then plaintiff would be entitled to recover what would make him equal.*"

Under these instructions there was a verdict and judgment in favour of the plaintiff for $300.09. Whereupon the defendant sued out this writ, averring here that the court below erred,

1. In receiving in evidence the Record Nos. 29 and 32, September Sessions 1860, Armstrong Quarter Sessions, and the testimony of William Blakely, either to contradict the witness Jacob Stein, or to impeach his character.

2. In receiving the notes of the testimony of W. A. Burleigh in evidence, his testimony having been taken between different parties in another cause of action, and the witness a permanent resident and within the jurisdiction of the court.

3. After instructing the jury that "this is a claim for a just compensation for mechanical skill, it ought to be done in a mechanical and skilful way, with reference to the object intended," the court erred in adding, "*otherwise there ought to be a deduction in proportion as the work failed to answer the purpose.*

[Wright v. Cumpsty.]

4. In instructing the jury as follows: " If, however, the jury should believe there was a partnership, how stands the matter then? The engine itself is not now in controversy. After it was taken out of the boat, Cumpsty obtained it on a *replevin* and still has it. The hull of the boat was sold by the constable for $46, and was bought by Charles Johnston; whether he bought in his own right, or was the mere agent of Dr. Wright, is for the jury. It is probable the jury may believe it was bought for Wright, and with his money. *If so, then the right of the owners would remain as before.* It was afterwards sold by Dr. Wright to Dr. Burleigh for $1000. The entire proceeds of this adventure then made available to the parties, would be the value of the engine got by Cumpsty, and the proceeds of the hull got by Wright. If the engine, as got by Cumpsty, was worth $500, then the entire proceeds would be $1500—two-thirds to Wright and one-third to Cumpsty—and as they just got that amount out of the proceeds, it would seem, if the evidence is believed, and this the correct view of the subject, that the plaintiff had got all he was entitled to. *If, however, the engine as got by Cumpsty was worth less than the one-third of the entire proceeds, then plaintiff would be entitled to recover what would make him equal.*"

*John K. Calhoun*, for plaintiff in error, in support of the first specification of error, cited and relied on 2 Greenlf. Ev., §§ 462–467; McAteer v. McMullen, 2 Barr 32. 2. In support of the second specification, he cited Haupt v. Henninger, 1 Wright 138; Act of March 28th 1814, Purd. 325. 3. The instruction italicised above, he argued, was entirely too broad. A piece of machinery may perform well, indifferently, badly, or not at all. Preston v. Finney, 2 W. & S. 55, decides, " A party acting honestly, and with a *bonâ fide* intention of fulfilling the contract, performs it substantially, but fails in some *comparatively slight particulars*, is entitled to a fair compensation according to the contract; the other party receiving credit for whatever loss or damage he may have sustained by these deviations." In the present case the jury were told the work "must be done with reference to the object intended." The object intended, was the propelling of the boat with an ordinary degree of speed and power, which might be from ten to fifteen miles per hour. But the jury were then instructed to deduct in "*proportion as the work failed to answer the purpose.*" What is a failure? Certainly a power that would propel the boat one mile per hour, is not a complete failure as to movement, but it is a *proportionate failure*, and one that would render the boat a complete failure as to the " object intended." The want of a bolt, a band, or the proper balancing of a wheel might cause a piece of machinery, otherwise well constructed, to perform indifferently or badly; with this remedied

[Wright *v.* Cumpsty.]

it would perform well, and this would be such "comparatively slight particular or deviation," as in Preston *v.* Finney, would entitle a plaintiff to recover. But general instructions to "deduct in proportion as the work failed to answer the purpose," go far beyond the rule. The object of putting the engine and machinery in the boat, was to obtain an ordinary degree of power and speed; any failure from this, in whatever proportion, was a total failure, and the jury should have been so instructed: Miller *v.* Phillips, 7 Casey 218. 4. The error assigned in this exception raises the question, Could the jury, in this action of *assumpsit*, under the pleadings and the allegations as to what the contract was by both the parties, go into a settlement of the accounts as presented, if they found a partnership to exist? The instructions are, "If, however, the jury should believe there was a partnership, how stands the matter then?" followed by comments as to the relative value of the engine. The whole of this part of the charge is predicated of the fact that the jury may find a partnership to exist. At law one partner cannot in general sue his copartner, in an action in form *ex contractu*, but must proceed by account or bill in equity; and this whether the partnership is general or particular, unless on a final balance of all accounts, a particular sum be found due: 1 Chitty on Plead. 39; Story on Part., §§ 218–222, and notes on same pages; Killam *v.* Preston, 4 W. & S. 14; Anderson *v.* Allan, 9 S. & R. 241; Id., 6 W. & S. 235; Van Amringe *v.* Ellmaker, 4 Barr 281; McFadden *v.* Heart, 5 W. & S. 468. The only instruction, it is submitted, that should have been given to the jury was, if they found a partnership to exist, to find for the defendant. There was no pretence by either party that there had been a settlement. The whole case of the plaintiff below, depended on the jury finding that there was no partnership in the boat.

*Golden* and *Fulton*, for defendant in error.—1. The rule in the Queen's Case, invoked to sustain the first assignment of error, never had any application in proof of *acts* and independent facts in contradiction of a witness; it only applied to conversations, statements, and correspondence, and has never been recognised as authority in Pennsylvania. The admission or rejection of evidence, such as is complained of here, is left to the sound discretion of the court trying the cause: SERJEANT, Justice, in Sharp *v.* Emmett, 5 Whart. 299; Kay *v.* Fredigal, 3 Barr 223. The rule upon the subject of affecting the credibility of a witness, is clearly laid down in Cameron *v.* Montgomery, 5 Whart. 132; Megehan *v.* Thompson, 9 W. & S. 541. The record of a criminal proceeding is evidence to impair the credibility of a witness: Commonwealth *v.* Knap, 9 Pick. 496; Commonwealth *v.* Green, 17 Mass. 160, 515, 549. 2. The testimony of Dr. W. A. Bur-

leigh was admissible in this case. In the case in which it was given, the identical questions were; involved which were in issue here, to wit, whether or not a partnership existed between the plaintiff and defendant, and to what extent; and whether the purchase by Johnston, of the steamboat Nebraska, was in his own right, or in trust for the defendant, J. K. Wright. The issues were the same—the parties were the same in interest. " Complete mutuality or identity of *all* the parties is not required; identity not in name but in interest, is enough :" Haupt v. Henninger, 1 Wright 140. Philip Mechling, the other party defendant in the *replevin*, was a mere depositary of the engine—having no interest in the ownership, and taking no part in the case. Whether the absence of Dr. Burleigh was such as to admit his testimony, was a matter in the sound discretion of the court trying the cause : 7 Watts 309; 3 W. & S. 293; 8 S. & R. 387; 10 Barr 418; Haupt v. Henninger, 1 Wright 140; Insurance Company v. Johnston, 11 Casey 72. 3. The exception to the charge in this instance is certainly hypercritical. The undertaking of every mechanic is to do his work substantially and skilfully, with reference to the object intended. Every machine or work is designed for some practical operation, and its construction under skilful workmen is ordered with special reference to its contemplated use; any other rule would be marked by the greatest ignorance of the simplest rules of mechanics. It results from this rule, that the damages sustained by a man for whose use a piece of machinery is made, are just in proportion to the failure of the machinery to answer the purpose for which it was designed, which proportion is exclusively for the determination of the jury. It may be a total failure, or only a partial one. It may be an honest failure on the part of the mechanic, or a designed and fraudulent one, and the damages will depend upon how the jury find the facts. 4. The theory upon which the plaintiff rested his right to recover in this case, is clearly stated in the second point put to the court, to wit, that the partnership was only to the extent of the engine, and that only upon condition that the engine answered the purpose for which it was intended. This the plaintiff in error admits in his "history of the case." It is true, the conclusion of the charge of the court would seem to go a little beyond this, and we contend that the court were right. This was a partnership upon condition, confined to a single adventure. No debts were outstanding against the firm, and no profits to divide ; the whole adventure had been closed by the delivery of the engine to Cumpsty, and the payment of the price of the hull, $1000, to Wright—no equities were to be adjusted : Brubacker v. Robinson, 3 Penn. R. 295; Gillis v. McKinney, 6 W. & S. 79; Galbraith v. Moore, 2 Watts 86; Borrell v. Borrell, 9 Casey 492; Curtin v. Cameron, 5 Whart. 279. This part of the

[Wright *v.* Cumpsty.]

charge, however, did no wrong to the plaintiff in error, and therefore he has no right to complain. The relative values of the engine and the hull were admitted facts. The engine $500, and the hull $1000; the whole adventure was, therefore, $1500. The rights of the parties were as one to two : Cumpsty one-third, and Wright two-thirds. They had received, by their own admissions, precisely in this proportion, and if the jury had adopted this view of the case their verdict would have been for the defendant. In no event could it have been for the plaintiff to the amount for which it was returned. This court have the right to follow the charge into the jury-room and watch its effect; and if it produce no effect they will refuse to reverse, even if the charge be erroneous. This view is fully sustained by these authorities: 6 Whart. 292; 17 Penna. R. 528; 11 S. & R. 374; 1 Penn. R. 144, 364, 370; 7 S. & R. 273.

The opinion of the court was delivered, November 18th 1861, by

THOMPSON, J.—We are clearly of opinion that the Court of Common Pleas erred in admitting in evidence the record of the Quarter Sessions of Armstrong county, to show the finding of two several bills of indictment for misdemeanors against the witness Stein. He had not denied that such bills had been found, for he was not asked the question. How, then, did the existence of the bills contradict him ? If he had denied the fact of their existence after being asked, then if that fact was relevant to the issue, they might have been given in evidence to contradict him. The nature of the evidence to contradict being two solitary facts, not necessarily in the mind of the witness when testifying, or of the essence of his testimony, he surely should have been asked about them before his answer could be contradicted by proof of their existence. This is undoubtedly the general rule: 2 Greenl. §§ 462, 467; McAteer *v.* Mullen, 2 Barr 32. The witness was asked his reasons for leaving Armstrong county, and he replied that he had left to engage in his business as a confectioner on the Mississippi river. Now, the bills of indictment were offered to show that he gave a false reason. They were improperly received, for two reasons. First, the question was about irrelevant matter, and could not be contradicted. Courts will not indulge parties in trying collateral issues that have nothing to do with the case, and hence an irrelevant answer, as it is presumed to have and ought to have no effect on the case trying, must be taken as true, and therefore no contradiction is allowed. Secondly, the evidence did not contradict the witness. The existence of the indictments found did not prove anything outside of themselves; much less did they contradict the reason given for leaving the county, or even raise a presumption that it was not true.

[Wright v. Cumpsty.]

But after all, we think the error was innoxious in so far as this case is concerned. Stein proved no partnership between the plaintiff and defendants, and this was the object in taking his testimony. He proved but little, and that little went to establish a joint ownership to the extent of one-third in the boat; but it made out no partnership in the legal acceptation of the term, nor nothing like it. As therefore he proved nothing beneficial to the defendant, or which could have benefited his defence, he cannot complain that he was injured.

The next assignment of error is to the reception of what Dr. Burleigh had sworn on a former trial between these same parties, about the matter of the contract about this boat, he being out of the state at the trial. We think the identity of the subject-matters in dispute was the same in both actions, and so were the parties, excepting that, owing to the nature of the action, being *replevin*, a stranger to the contract which was involved in that controversy was included, but the parties here were parties plaintiff and defendant there, and we think the identity is sufficient, and brings the admission of the evidence within the ruling in the Insurance Company *v.* Johnston, 11 Harris 72, and Haupt *v.* Henninger, 1 Wright 138, and the rule as stated in 1 Greenl. 163, 164. This assignment of error therefore fails.

3. The third error is to the charge of the court. The declaration was for a *quantum meruit*, and unless this was met by showing a special contract, it was not within the rule of actions on entire contracts, where entire performance or its equivalent must be alleged, and be followed by proof showing complete performance or dispensation therewith by the party entitled to performance. Preston *v.* Finney, 2 W. & S. 55, and Miller *v.* Phillips, 7 Casey 218, were of this class. But no such special contract was declared on or shown in this case, and hence, for defective workmanship a compensation might be allowed by a deduction from the amount claimed; or if the work was worth nothing, a jury might so find by their verdict. The judge committed no error in this part of his charge.

4. But a further error is assigned to the charge, in which the court seems to expound the law so as to allow the jury to settle the indebtedness of the parties even if a partnership should be found to exist. I doubt whether there was a technical partnership proved in the case, but if there was, it does not follow that there was error in allowing the jury, in the equitable action of *assumpsit*, to settle the rights of the parties, as there was no pretence that there were any debts due by or in favour of the firm. If it was a partnership, it was in the ownership of the boat. It was alleged that one was to contribute the hull and the other the engine, the former to be two-thirds owner and the latter one-third. It was a question whether Wright had not got the

hull, and it was a fact that Cumpsty had got the engine; but the court said, "If, however, the engine as got by Cumpsty was worth less than one-third of the entire proceeds, then plaintiff would be entitled to recover what would make him equal." It would be difficult to see what might be coming to plaintiff if the possession of the engine which he had got by his action of *replevin* were equal to one-third: but the question of partnership was pressed on the other side, and the general question, irrespective of this assignment, was contended for by the plaintiff in error. Even if this were so, the transaction being a single one, the plaintiff might recover what would make him equal with his copartner, and to this effect clearly are the cases of Brubaker *v.* Robinson, 3 P. R. 295, Gillis *v.* McKinney, 6 W. & S. 79, Galbraith *v.* Moore, 2 Watts 86, Borrell *v.* Borrell, 9 Casey 492. The old doctrine of the books, which requires a balance to be struck, and an express promise to pay it, or to pay any balance to be ascertained in cases like the present, does not now exist to the extent formerly held. This is abundantly shown in Van Amringe *v.* Ellmaker, 4 Barr 281; in Gillis *v.* McKinney, and in Borrell *v.* Borrell, *supra*. In these cases the doctrine of a recovery on an implied promise is clearly held. It is certain there are authorities to the contrary, but the cases cited are among the latest on the subject. They show a disposition of the courts to remove, whenever it can be done, the necessity for a resort to the cumbrous remedy by account render. While the action still remains a remedy, appropriate in cases of trading and dealing as partners, the disposition is to limit rather than enlarge the necessity for it as a remedy; and in the later cases cited, it is superseded as between partners in a single transaction or adventure, only. The objection here at most only raises a question of remedy and not of right, as was said in Van Amringe *v.* Ellmaker, and every purpose of justice may be as well attained in an equitable action of *assumpsit* as in account render. We see no error calling for a reversal of the judgment in this case. And the

Judgment is affirmed.