Commonwealth *v.* Fusci, Appellant.

Argued October 25, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ. (RENO, J., absent).

618

*B. D. Olinesis,* with him *S. Maxwell Flitter* and *E. A. Hurshman* for appellant.

*Irving W. Coleman,* with him *Clyde W. Teel,* Assistant District Attorneys, and *Henry K. Van Sickle,* District Attorney, for appellee.

OPINION BY HIRT, J., December 9, 1943:

Defendant was convicted of transporting Jean Sharkey, a nineteen year old girl, from Philadelphia to Easton, Pennsylvania, for the purpose of prostitution, (Act of June 24, 1939, P. L. 872, §517, 18 PS 4517) and was sentenced. He contends that he was prejudiced by the admission in evidence of two letters found in his possession when arrested, one written to him by Michael Pasquarello and the other by his sister. Whether their admission was reversible error requiring a new trial is the question here.

The Commonwealth's testimony is sufficient to establish the following facts: The girl had been living with Pasquarello in his apartment in Philadelphia for several weeks. Defendant first met her there. Although undoubtedly promiscuous, she had not been a prostitute. On the evening of December 3, 1941, defendant in Philadelphia called a bawdy house at 514 Pine Avenue, Easton by telephone. The call was answered by Jean Clark, a prostitute inmate of the house. Defendant did not give his name but said: "This is Rusty calling." He inquired "if we could use a girl." The girl replied that she would have to consult Moetta, the madam or proprietress of the house, and asked him to call back. De-

fendant called again by long distance telephone later in the evening and Jean Clark, repeating instructions from Moetta, told him to bring the girl in. Defendant conveyed the Sharkey girl from Philadelphia to Easton later that same night in an automobile driven by him. Pasquarello accompanied them. The three were admitted to the bawdy house in Easton by Jean Clark, and defendant identified himself as the one "who called and used Rusty's [1] name over the telephone." He told her that Jean Sharkey was the girl Moetta was expecting. Jean Clark recognized his voice as that of the same person who had made both telephone calls. She also reported to the two men the details of the financial arrangement as directed by Moetta.[2] Both of the men left about an hour later; the Sharkey girl remained and became a prostitute inmate of the house. Defendant returned to Easton several times thereafter. On one occasion Jean Sharkey paid a fine assessed against him for violation of a traffic regulation. He with Pasquarello spent one evening with the Clark and Sharkey girls at 'Palm Gardens' in New Jersey. On another occasion the four went on a trip to Maryland and return in a car driven by defendant.

As a part of an organized effort to stamp out commercialized vice in Easton, in which there were many

---

[1] "Rusty" apparently was a code name identifying defendant in his telephone call, without divulging his name, as one with whom Moetta would deal. The name also appears to have been used generally in referring to panderers and the like, especially those who were operating together in the promotion of commercialized vice in Easton.

[2] Jean Clark was not an accomplice and the court did not err in failing to instruct the jury to receive her testimony with caution on that ground. This girl was but a messenger, the medium through whom an inquiry was relayed to Moetta, the proprietress of the bawdy house, and Moetta's answer to the question. The status of this witness under the testimony was for the court to determine. *Com. v. Brown,* 116 Pa. Superior Ct. 1, 12, 175 A. 748.

prosecutions, the information in this case was lodged against defendant on December 28, 1942, and a warrant issued for his arrest. A State police officer immediately made an investigation in an attempt to locate the defendant but was unable to find him in Philadelphia or elsewhere. On a description of him, broadcast to the police departments of many cities, the defendant was finally located and was arrested in New Orleans, Louisiana, in June 1943. In the meantime his whereabouts was unknown. He testified that he went to New Orleans in January or February, 1943.

From the circumstances the jury were justified in concluding that defendant left the jurisdiction to evade arrest. Flight and concealment are evidence of guilt and the jury were so instructed in this case. *Com. v. Del Giorno,* 303 Pa. 509, 154 A. 786. It was also a reasonable inference that defendant kept himself informed as to his case and the progress of the crusade in Northampton County. In New Orleans he lived at four different addresses. Although he testified that he was employed under his real name, one of the two letters found in his possession had been mailed to his brother in New Orleans, and the other was addressed to him as "Joseph Berratti." Defendant admitted using this name and that both letters were written to him.

One of the letters, dated February 21, 1943, from Pasquarello was signed "Mike." It reported "bad news." In it Pasquarello stated: "That bitch [referring to Jean Sharkey] open up and is trying to put us in plenty of hot water." A newspaper account, presumably the substance of an interview with her, was enclosed although the clipping was not found with the letter. The letter continued: "Joe I can't get no one [presumably counsel] cause they looking high and low for us . . . . . . Joe don't try and go to work cause they will grab you as sure as God made apples . . . . . . As soon as something turns up I'll let you know." The letter admonished defendant: "Don't forget to write to this address—don't use my

name." There followed the name and address of a woman in Philadelphia. Other statements in the letter seem to indicate that Pasquarello also had been in New Orleans. The letter was written immediately after he had "arrived home." [3]

The second letter was from defendant's sister who wrote him on May 3, 1943. The letter contains these, with other similar statements: "I went over to see some one that is taking care of Rusty case. And he told me that the best thing to do is for us not to speak to anyone about your case unless they caught up with you ...... He said if you come here you won't have a chance to get away with it ...... I want to go see Rusty lawyer and this man stop me because he told me not to trust anyone and he said not to talk about it at all ...... We cannot get a lawyer to look up what charges they have against you because they want to know what kind of interest they have in the case ...... try to stay away until election time is up ......"

Defendant's conduct following the issue of a warrant in this case charges him with fleeing the jurisdiction to avoid arrest. Under the circumstances the letters were properly admitted as additional evidence of flight, particularly in its broader aspect of concealment. Flight consists not only in the act of leaving the jurisdiction; it also comprehends continued concealment to avoid arrest and prosecution. *Com. v. Myers,* 131 Pa. Superior Ct. 258, 200 A. 143.

The precise question raised in this appeal has not been decided in Pennsylvania. But it is a familiar principle that unexplained possession of things, in itself, may be evidence against the possessor. Thus, possession of recently stolen property is evidence that the possessor is the thief. *Com. v. Dock,* 146 Pa. Superior

---

[3] Pasquarello later was convicted by pleas of guilty on indictments charging pandering, transportation, and accepting bawd money.

Ct. 16, 21 A. 2d 429. In *Com. v. Bassi*, 284 Pa. 81, 130 A. 311, the defendant was convicted of murder in the perpetration of robbery committed by him and others. A sketch showing the location of towns and highways was found in a room occupied by defendant and other men; it was not shown that the sketch belonged to defendant or that he was aware of its existence. Nevertheless the paper indicating a study of the highways leading from the scene of the robbery in the direction in which the robbers fled, was admitted as evidence against the defendant, of preparation for the commission of the crime and plans for escape. See also *Com. v. Pezzi*, 284 Pa. 85, 130 A. 312.

Certainly the law applicable to oral incriminating statements (*Com. v. Vallone*, 347 Pa. 419, 32 A. 2d 889) does not apply to letters received by a defendant. One would be likely to ignore such letter, if false in its statements of fact or unsound in its advice, as unworthy of serious consideration. Accordingly, in the absence of proof that a defendant replied to letters received by him or otherwise recognized the validity of the statements contained in them or *acted in pursuance of them,* the letters are not evidence against him. *Razor v. Razor,* 149 Ill. 621, 36 N. E. 963; *Moy Wing Sun v. Prentis,* 234 Fed. 24; *Terrell v. State,* 228 S. W. 240, (Tex.); *Snead v. Commonwealth,* 121 S. E. 82, (Va.). But when it is shown by other proof that the information or advice in a letter was sanctioned by acceptance and was acted upon, to that extent such letter is competent evidence. *Packer v. United States,* 106 Fed. 906. For general comment on the rule see 80 A. L. R. 1244; 20 Am. Jur., Ev., §568-572; 22 C. J. S., Criminal Law, §753. Wigmore discusses the principle thus: "The written statements of a *third person* may be so dealt with *by the party* that his assent to the correctness of the statements may be inferred, and they would thus by adoption become his own statements ...... The party's *posses-*

*sion* of a document made by a third person may well be evidence of the party's knowledge of its contents. 4 Wigmore on Ev., 3d Ed., §1073.

In the present case the letters in question referred to the fact, known to the defendant, that he was accused of crime. They also warned him that the police were looking for him and advised him to remain in hiding. He did remain in New Orleans for more than three months after the first letter and until he was apprehended. From the failure of defendant, in testifying in his own behalf, to explain away the implications of these letters, the jury were justified from his conduct in concluding that he acted upon the information and advice contained in them. We are not called upon to decide whether the letters were competent as direct proof of guilt. Their admission was limited to the question of defendant's flight and concealment. We agree that in the admission of such letters each case must stand on its own facts, (Wigmore on Ev., *supra*) but it is clear from the circumstances in this case that the letters were properly received for the purpose for which they were offered.

Judgment affirmed.