Commonwealth *v.* Marmon et al., Appellants.

Argued December 16, 1966.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

204

*Cormac J. Malloy*, with him *William D. Harris*, for appellant.

*Leon W. Silverman*, with him *Bernard L. Segal*, for appellant.

*Arlen Specter*, District Attorney, with him *Alan J. Davis*, Assistant District Attorney, for Commonwealth, appellee.

Opinion by Watkins, J., June 16, 1967:

These are appeals from the judgment of sentence by the defendants-appellants, Ruth Marmon and Joseph Bardascino, imposed after convictions on indictments charging bribery, extortion, violation of the Magistrates' Court Act of 1937 and conspiracy.

The facts upon which the convictions were based were largely uncovered as a result of an investigation of the Philadelphia Magisterial system conducted by the Attorney General of Pennsylvania and may be summarized as follows:

On August 29, 1963, a Thursday, Mr. and Mrs. Walker contacted John J. Welsh, a committeeman and

state assemblyman, in the hope that he could do something with regard to Mr. Walker's arrest that morning on a lottery charge.

The next morning Welsh awaited the arrival of the defendant Marmon outside the police court in which she was to preside as magistrate that day. He spoke to her upon her arrival pleading Walker's non-involvement in the numbers business. Magistrate Marmon said, "It would be $100 or $1,000 bail." Under the arrangement, she would discharge for $100. In the alternative, she would hold Walker for court on $1000 bail, the premium for which would be the equivalent of the proposed bribe.

Welsh then told Marmon that one Crittendon, the Walker's lodger, was the true culprit. Crittendon heard part of the conversation. At the hearing for Walker, Walker was discharged and Crittendon was held for a hearing the next day at the instigation of Magistrate Marmon. Crittendon was thereupon arrested and held for a hearing, Saturday, August 30, 1963.

On Saturday morning Magistrate Marmon beckoned Welsh to approach the bench and told him it was "still a $100 or $1000 bail." Welsh reported this to the Walkers, but they only had $50. This was reported to Magistrate Marmon and she told Welsh to "talk to my clerk", indicating the defendant Bardascino, then sitting beside her on the bench. Bardascino took Welsh into a side room. He took the $50 from Welsh for the payoff and made arrangements for payment of the $50 balance. Crittendon was discharged.

Monday was Labor Day. The Walkers could not withdraw the balance from their bank. Welsh telephoned Marmon's office and was informed by her regularly appointed clerk that Bardascino was not there. Bardascino called Welsh that night and arranged another appointment for noon Wednesday at Welsh's of-

fice. Having obtained the $50 from Walker on Tuesday, the balance of the bribe was to be given by Welsh to Bardascino when he kept the Wednesday appointment. Welsh then paid the balance of $50 to Bardascino. Since convictions were had the above summary of facts are taken in the light most favorable to the Commonwealth.

Appellants raise numerous questions alleging many errors in the trial and charge to the jury. We will attempt to dispose of them in an orderly fashion.

First, they contend that the investigation and prosecution by the Attorney General were in violation of Section 907 of The Administrative Code and without legal basis.

This is patently incorrect. Section 907 of The Administrative Code established one means by which the attorney general may be brought into a criminal proceeding in any of the several counties of the Commonwealth. This, however, is not a limitation on the over-all powers and duties of the office. He is the chief law enforcement officer of the Commonwealth, and is charged with the duty of seeing that the law throughout the Commonwealth is enforced, and he has the power and duty to investigate alleged violations thereof and take such enforcement steps as may be necessary. *Matson v. Margiotti*, 371 Pa. 188, 88 A. 2d 892 (1952). He has all the powers and attributes of attorneys general under the common law. *Appeal of Margiotti*, 365 Pa. 330, 75 A. 2d 465 (1950); *Com. ex rel. Minerd v. Margiotti*, 325 Pa. 17, 188 A. 524 (1936).

The action of the attorney general in the instant cases was taken after a request to the Governor by several judges of Philadelphia County; he acted at the direction of the Governor and carried out his investigation with the assistance and cooperation of the District Attorney of Philadelphia County.

Appellant Marmon contends that the statements presented in the complaint to the magistrate issuing the warrant for arrest were not sufficient to allow the magistrate to make an independent determination of probable cause. The complaint was executed and sworn to by an investigator for the Department of Justice, was presented to a judge of the Court of Oyer and Terminer of Philadelphia County sitting as a committing magistrate and was as follows:

"On or about August 30, 1963, in the County of Philadelphia, the accused committed the following acts: they did conspire together to commit extortion and to violate the Magistrates Act of 1937 and did commit extortion and did violate the Magistrates Act of 1937 by extorting, demanding, taking and accepting the sum of $100.00 from an agent or intermediary of Andrew Crittendon, a defendant in case of Commonwealth v. Andrew Crittendon, all of which was against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the pertinent Acts of Assembly. I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I have made, and I swear to or affirm the within complaint upon my knowledge, information and belief, and sign it on July 14, 1965 before Honorable JOSEPH SLOANE whose office is that of President Judge, Common Pleas No. 7."

It is enough if the information states a criminal offense committed by defendant, its general nature, and its time and place. The information must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. Where the information sets forth some detail of the circumstances, where there is reason for crediting the source of the information which is disclosed, and when a magistrate has found probable cause, we should not invalidate warrants by interpreting the affidavits in a hyper-techni-

cal, rather than a common sense manner. We find there was sufficient information and probable cause for issuance of the warrants. *Com. v. Ametrane*, 205 Pa. Superior Ct. 567, 210 A. 2d 902 (1965). It should also be noted that the defendants waived a hearing before the court sitting as a committing magistrate.

Appellant Bardascino contends that under the circumstances there was so much pretrial confusion that he did not have a reasonable opportunity to challenge the array of the grand jury. From the record it appears there were two arrests and three separate presentments to the grand jury and three sets of indictments. Warrants for the arrest of appellants were issued by Judge SLOANE on July 14, 1965 and the appellants were arrested on July 15, 1965, were preliminarily arraigned before the same Judge on July 21, 1965 and bills presented to the grand jury on August 12, 1965 and the appellants were indicted that same day.

At this time, because of petitions for writs of habeas corpus, motion to quash warrants, stay orders and phone calls, confusion reigned supreme.

The Attorney General, in order to protect the record from any future contingencies, on August 20, 1965, filed a new complaint against both appellants before Judge CARROLL of the court below who, the same day, issued warrants for their arrest. Appellants were again arrested on August 23, 1965, a preliminary hearing was set for August 27, 1965 at which time both waived the hearing and on August 30, 1965, with the statute of limitations about to run on several of the charges, they were again indicted. These same bills were again presented to the grand jury and another set of indictments had on October 28, 1965.

Appellant Bardascino, by his attorney, notified the Attorney General by letter on August 27, 1965 that he intended to challenge the array, but took no further

action. The term for this grand jury started on August 2, 1965.

Appellant relies on the case of *Com. v. Dessus,* 423 Pa. 177, 224 A. 2d 188 (1966), in which the defendant was held for action by the grand jury by a magistrate and indicted the same day. The Supreme Court discussed the new Rule 203 of the Rules of Criminal Procedure, and the question of the violation or circumvention of defendant's constitutional rights because of a speedy indictment not giving the defendant a reasonable opportunity to challenge the array at page 187 as follows: Rule 203 provides: (Adopted June 30, 1964; effective January 1, 1965).

"Rule 203. Objections to Grand Jury and Grand Jurors.

"Either the attorney for the Commonwealth or a defendant who has been held to answer may challenge the array of jurors or an individual grand juror. A challenge to the array may be made only on the ground that the grand jury was not selected, drawn, or summoned substantially in accordance with law. An individual grand juror may be challenged on the ground that he is not legally qualified or that a state of mind exists on his part which may prevent him from acting impartially. All challenges must be made before the jurors are sworn unless opportunity did not exist prior thereto; in any event a challenge must be made before the bill of indictment is submitted to the grand jury. All challenges shall be heard and determined by the court. If a challenge to the array is sustained, the grand jury shall be discharged, if a challenge to an individual grand juror is sustained, he shall be retired or discharged and the court may replace him from the persons drawn or selected for grand jury service."

The court held in that case, "under all the circumstances, we shall interpret the Rule liberally, in order to preserve *if promptly exercised,* defendant-appellee's

legal and constitutional right to challenge the grand jury array, or an individual grand juror or grand jurors for cause." In the instant case, however, appellant was represented by counsel at every stage of the proceedings and under these circumstances, as the Rule is now promulgated, had sufficient reasonable opportunity, if promptly exercised, to challenge the array, etc.

The contention of appellant Bardascino, that the charge of the court regarding alibi was error, is without merit. When read as a whole, the charge fairly placed the burden of proof on the Commonwealth and explained the possibility that alibi evidence, either alone or together with other evidence, may be sufficient to create a reasonable doubt as set forth in *Com. v. Bonomo*, 396 Pa. 222, 151 A. 2d 441 (1959).

The appellants contend as error the court's charge as to reputation evidence being limited as substantive evidence to the crimes charged of conspiracy, bribery and extortion and excluding it from their consideration of the charged violation of the Magistrates' Court Act of 1937, since there was no criminal intent required in finding a violation of the Act.

This trial presented a very novel and difficult situation, in that crimes were charged which require criminal intent for conviction and also the violation of the Magistrates' Court Act. The charge of the court was fair and clear as to reputation evidence generally and as to its exclusion from consideration regarding the Magistrates' Court Act. This was limited to the question of whether or not the appellants were guilty of doing the acts complained of regardless of intent and in no way restricted the consideration of the reputation evidence in determining the general credibility of the appellants as to all their testimony regardless of the crime charged. At the new trial of these matters, which is being granted by this Court, the court below will have

an opportunity to spell this out without difficulty, as called for in *Com. v. Zeger*, 193 Pa. Superior Ct. 498, 165 A. 2d 683 (1960).

Appellant Marmon contends that the charge of the court regarding the crime of bribery was fundamental error. With this we must agree. The court charged as follows: "You may convict the defendants upon the uncorroborated testimony of an accomplice provided his testimony satisfies you of the guilt of the defendants beyond a reasonable doubt." No attempt was made to eliminate the bribery charge from this instruction even though the Act of March 31, 1860, P. L. 382, §49, 18 PS §2, as amended, sets forth the following:

"Bribery; witness testifying to be exempt from prosecution; testimony of accomplice. . . .

"Provided, that the accused shall not be convicted on the testimony of an accomplice, unless the same be corroborated by other evidence, or the circumstances of the case."

The crime of bribery is one offense. 1939, June 24, P. L. 872, §303, as amended, 1963, July 31, P. L. 421, §1, 18 PS §4303, but it takes more than one person to commit it, the briber and the one bribed. The Act provides more serious punishment for the public functionary who receives the bribe than the one offering it. This is obviously based on public policy. The Act provides for different punishments and makes it a misdemeanor for the briber and a felony for the one bribed. "No witness shall be excused from testifying in any criminal proceeding . . . touching his knowledge of the aforesaid crime, under any pretense or allegation whatsoever; but the evidence so given, . . . shall not be used against him in any prosecution under this act; provided that the accused shall not be convicted on the testimony of an accomplice, unless the same be corroborated by other evidence, or the circumstances of the case." 1860, March 31, P. L. 382, §49, 18 PS §2.

Portions of the Act of 1860 have been repealed but this section is still a part of the statutory law of Pennsylvania and should be preserved. Otherwise it is an invitation to make reckless accusations by one protected from prosecution by the law itself and might well result in serious injustice. The court below misled the jury to the prejudice of the appellants when it could just as easily have gone on to state that the conviction could be sustained on the testimony of an accomplice if corroborated by other evidence or the circumstances of the case. There may well be sufficient evidence in this record to sustain such a charge.

The court below, in its opinion, distinguishes the briber from the one bribed since one is guilty of a misdemeanor and the other a felony, and that, therefore, one could not be the accomplice of the other. This is error. There was only one offense of bribery with different punishments but both punishments are imposed for violation of the same act and for purposes of immunity under Art. III, §32 of the Constitution of Pennsylvania the briber and the one bribed are considered accomplices. "Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony, and any person convicted of either of the offenses aforesaid shall, as part of the punishment therefor, be disqualified from holding any office or position of honor, trust or profit in this Commonwealth." We must read all the statutes under the light of the Constitution. "The crime of bribery applies to the giver and to the taker of the bribe.

Each is the accomplice of the other." *Com. v. Kilgallen,* 379 Pa. 315, 108 A. 2d 780 (1954).

*Com. v. Hopkins,* 165 Pa. Superior Ct. 561, 69 A. 2d 428 (1949), holds that the test of determining if one is an accomplice of the accused on trial is whether or not he could be indicted and punished for the crime with which the accused is charged. Certainly the giver of the bribe may be indicted and convicted under the Act of 1939, as amended 1963, supra, which provides: "Whoever shall directly or indirectly, or by means of and through any artful and dishonest device whatever, give or make any promise, contract or agreement, for the payment, delivery, or alienation of any money, goods or other thing, in order to obtain or influence the vote, opinion, verdict, award, judgment, decree, or behavior of any member of the General Assembly, or any officer or employe of this Commonwealth, or of any political subdivision thereof, or any judge, juror, justice, referee or arbitrator, in any bill, action, suit, complaint, indictment, controversy, matter or thing whatsoever, depending or which shall depend before him or them, is guilty of bribery, a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or to undergo imprisonment by separate or solitary confinement at labor not exceeding one (1) year, or both." This is the same crime of bribery under which the defendants in this case were indicted and convicted but because of the testimony of the giver on behalf of the Commonwealth he is immune from prosecution under the law.

We come now to the final question and that is whether the trial court erred in admitting the testimony of assistant district attorneys, and the records of ten unrelated cases which came before appellant Marmon, as rebuttal. Appellant Marmon testified that in the cases of Walker and Crittendon, she discharged

Walker and directed the arrest of Crittendon on the advice of the assistant district attorney, who was present on Friday. The assistant district attorney had been called by the appellant but had no recollection of the proceeding and stated nothing unsual happened to help him recall, and the record did not indicate anything unusual. Appellant Marmon, on cross-examination, stated that she followed the advice of the assistant district attorney most of the time, not always, and that she was not bound to take their advice.

The Commonwealth was then permitted to introduce testimony on these ten proceedings, all except one of which had to do with numbers violations, out of several hundred cases she had heard, to show that she did not rely on the advice of the assistant district attorneys as she had indicated, "almost always".

Once admitted, the Commonwealth then proceeded to read into the record the prosecutor's side of the case. Upon request of defense counsel the defense testimony, the disposition made by appellant Marmon and the recommendations of the assistant district attorney were also read into the record. The Court also charged on the duties of a magistrate in such cases.

The door was thrown open to numerous inferences, innuendoes and collateral decisions to be made by the jury. They could not help but try to determine whether she acted properly in these unrelated cases and be influenced by their decision in them. The original purpose for the testimony becomes hopelessly lost in the web of events having nothing to do with the case at issue. So much so, that no admonishment by the court, or attempt to limit the purpose for the testimony can wipe it clean in the mind of a juror. We cannot agree, under all the circumstances of this case, with the contention of the Commonwealth that "even if error (the introduction of the cases) it was not prejudicial in the context of the trial." How do you define

"almost always"? Are we going to try and rebut tonal changes in voice or gestures because we infer a witness attempted to convey something to the jury other than what her words indicate? This we believe goes far afield. It is true that the admission of testimony is left largely to the sound discretion of the trial court, and his decision will not be reversed unless that discretion is abused. This record indicates an abuse of discretion which requires reversal in the interest of justice.

Judgment of sentence reversed and a new trial is granted both appellants.

---

DISSENTING OPINION BY ERVIN, P. J.:

The factual background of this case is adequately set forth in the majority opinion and need not be repeated in this dissenting opinion. The majority opinion satisfactorily disposes of all the points raised by the appellants in these appeals with the exception of two points and, because of these two, reverses the judgments of sentence and grants a new trial to the appellants. I would also reject these two contentions and affirm the judgments of sentence.

Appellants argue that the trial judge's following instruction to the jury was error: "You may convict the defendants upon the uncorroborated testimony of an accomplice provided his testimony satisfies you of the guilt of the defendants beyond a reasonable doubt. However, you must bear in mind that the testimony of an accomplice comes from a corrupt and often unreliable source. You must, therefore, carefully, critically and closely scrutinize any such testimony. The reason that such testimony is considered as emanating from a corrupt source is that it comes from a person or persons who admittedly are involved in, or a part of, a serious criminal offense and it must, therefore, be received with some suspicion. If, on the other hand,

after having carefully considered the testimony of an accomplice, you are convinced that it carries with it the clear conviction of truthfulness, you may accept and act upon such testimony."

It is argued that the statutory law of Pennsylvania prohibits the conviction of any person charged with bribery upon the uncorroborated testimony of an accomplice and that it was fundamental error for the trial judge not to have thus instructed the jury. The argument is presented notwithstanding the fact that this position was at no time asserted during the course of the trial nor was the failure to so instruct on this basis expressly excepted to. The appellants' written requests for instructions made no such request.

The issue raised by appellants is based upon the Act of March 31, 1860, P. L. 382, §49, 18 PS §2. That section provided: "No witness shall be excused from testifying in any criminal proceeding, or in any investigation or inquiry before either branch of the general assembly, or any committee thereof, touching upon his knowledge of the aforesaid crime, [referring to bribery as defined in the Act of March 31, 1860, P. L. 382, §48] under any pretense or allegation whatsoever; but the evidence so given, or the facts divulged by him, shall not be used against him in any prosecution under this act: Provided, That the accused shall not be convicted on the testimony of an accomplice, unless the same be corroborated by other evidence, or the circumstances of the case."

There is a serious question as to whether The Penal Code, Act of June 24, 1939, P. L. 872, §1201, 18 PS §5201, repeals this portion of the 1860 act. I find it unnecessary to reach that question in the disposition of this case. The real question is whether the witness, John Welsh, was an accomplice. As to the charges of extortion and violation of the Magistrates' Court Act, he was a victim and not an accomplice: *Com. v. Galla-*

*gher*, 165 Pa. Superior Ct. 553, 559, 69 A. 2d 432 (1949); *Com. v. Hopkins*, 165 Pa. Superior Ct. 561, 69 A. 2d 428 (1949).

As to the bribery charge, I am also firmly convinced that Welsh was not an accomplice. Judge (later Justice) ARNOLD, in the case of *Com. v. Hopkins*, supra, very clearly gave the test for determining just what an accomplice is. Commencing at page 564 of that opinion he said: "We cannot sustain appellant's contention that each of the persons from whom the money was extorted was an accomplice of the defendant, who was entitled to a charge (requested and refused) on the quality of accomplice testimony.

"By the great weight of authority the test of determining if one is an accomplice of the accused on trial is whether or not he could be indicted and punished for the crime with which the accused is charged. One who could not be convicted of the crime with which the accused is charged is not an accomplice, regardless of how culpable his conduct may have been. See 22 C.J.S., Criminal Law, §786, page 1334; 56 A.L.R. 407, 412; 111 A.L.R. 1393. In Underhill on Criminal Evidence (4th ed.) §150, page 222, the rule is thus stated: 'One test as to whether or not a person is an accomplice is held to be whether there is sufficient evidence to indict for the crime upon which the accused is standing trial'; citing cases from Arkansas, California, Delaware, Georgia, Idaho, Illinois, Iowa, Kentucky, Minnesota, Montana, New Mexico, Oklahoma, Oregon, Tennessee and Texas. To these must be added Utah (State v. Gleason, 86 Utah 26, 40 Pac. 2d 222) and Ohio (State v. Ruskin, 117 Ohio St. 426, 159 N.E. 568). We followed the weight of authority in Commonwealth v. Billingsley, 160 Pa. Superior Ct. 140, 50 A. 2d 703, aff. 357 Pa. 378, where the defendant was charged with attempted subornation of perjury of one House, who had testified falsely at the defendant's in-

stance in a civil action, but who withdrew and correct-
ed his testimony. There the only evidence of defend-
ant's attempted subornation of House came from the
uncorroborated testimony of the latter. Appellant-de-
fendant claimed that House was an accomplice. We
said (page 145) : '. . . the suborned and the suborner
. . . are not accomplices as to the procurement or sub-
orning of the witness to commit perjury, because a sub-
orner cannot be guilty of suborning himself [citing au-
thorities].'' The patent culpability of House (in at-
tempting perjury) did not make him an accomplice of
Billingsley as to the latter's attempted subornation of
House." The footnote (page 565 n. 2) sets forth other
examples of interest: "A girl under sixteen is not an
accomplice of a defendant charged with consensual rape
upon her: Commonwealth v. Feist, 50 Pa. Superior Ct.
152; nor is an abortion victim an accomplice: Com-
monwealth v. Bricker, 74 Pa. Superior Ct. 234; Com-
monwealth v. Sierakowski, 154 Pa. Superior Ct. 321,
35 A. 2d 790. The victim of one charged with violation
of the White Slave Act is not an accomplice: U. S. v.
Sorrentino, et al., 78 F. Supp. 425. An alien unlaw-
fully entering the United States is not an accomplice
of one unlawfully bringing the alien into the country:
Emmanuel v. U.S., 24 Fed. 2d 905, certiorari denied,
278 U.S. 643; Campbell v. U.S., 47 Fed. 2d 70; a bawdy
house inmate who relayed defendant's inquiries to the
proprietress is not an accomplice of a defendant trans-
porting a girl for purposes of prostitution: Common-
wealth v. Fusci, 153 Pa. Superior Ct. 617, 35 A. 2d
93."

Welsh was the giver of the bribe and the appellants
were the receivers of the bribe. The charge of bribery
against these appellants is based upon the Act of June
24, 1939, P. L. 872, §303, 18 PS §4303 (The Penal
Code) and not the common law offense. This provi-
sion is as follows: "Whoever shall directly or indirect-

ly, or by means of and through any artful and dishonest device whatever, give or make any promise, contract or agreement, for the payment, delivery, or alienation of any money, goods or other thing, in order to obtain or influence the vote, opinion, verdict, award, judgment, decree, or behavior of any member of the General Assembly, or any officer of this Commonwealth, judge, juror, justice, referee or arbitrator, in any bill, action, suit, complaint, indictment, controversy, matter or thing whatsoever, depending or which shall depend before him or them, is guilty of bribery, a misdemeanor, and on conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or to undergo imprisonment by separate or solitary confinement at labor not exceeding one (1) year, or both.

"The member of assembly, or officer, judge, juror, justice, referee, or arbitrator, who shall accept or receive, or agree to accept or receive such bribe, is guilty of receiving a bribe, a felony, and on conviction thereof, shall be sentenced to pay a fine not exceeding one thousand dollars ($1,000), or to undergo imprisonment by separate or solitary confinement at labor not exceeding five (5) years, or both."

Appellant Marmon could not have been proceeded against for common law bribery: *Com. v. Bausewine,* 354 Pa. 35, 37, 46 A. 2d 491 (1946). The appellants were charged with receiving a bribe, a felony. Welsh, at best, could have been found to have offered a bribe, a misdemeanor. Welsh could not have been convicted of the crime of receiving a bribe. Whether Welsh is an accomplice does not depend upon the degree of his culpability in this matter. He certainly could not be indicted and punished for the crime with which the appellants are charged and therefore is not an accomplice.

The majority opinion, as well as the appellants, rely greatly upon the case of *Com. v. Kilgallen*, 379 Pa. 315, 108 A. 2d 780 (1954), wherein the Supreme Court, in considering the extent of immunity conferred by art. III, §32 of the Pennsylvania Constitution, states: "The crime of bribery applies to the giver and to the taker of the bribe. Each is the accomplice of the other." It should be noted that the question of what constitutes bribery under the Constitution is broader than that contained in the statutory definition. Furthermore, the statement is pure dictum because Kilgallen was the alleged receiver of the bribe. The case was not one in which the giver of the bribe was testifying against the receiver. All the *Kilgallen* case decided was that since Kilgallen could be subjected to a bribery indictment, he could not be compelled against his will to testify before an investigating grand jury and that any testimony given by him before the investigating grand jury could not be considered by an indicting grand jury.

The appellants also argue that the trial judge erred in permitting certain rebuttal testimony. Appellant Marmon had discharged Walker and had then instructed the police officers to arrest Crittenden. At the time she ordered the arrest of Crittenden, she had all the evidence against Crittenden before her, because it was presented on that Friday in the case against Walker. Yet the very next day, she discharged Crittenden on the same evidence.

That sequence of events led to an extremely damaging inference that appellant Marmon had some ulterior motive in causing Crittenden to be arrested on Friday (knowing all the evidence against him) and then discharging him the next day. It provided support for the Commonwealth's position that appellant Marmon's inconsistent action was motivated by the intervening bribe. Appellant Marmon tried to avoid the fatal in-

ference that she held Crittenden one day and discharged him the next because of the intervening bribe by giving an explanation for her instruction to the officers, as follows: "That was because the Assistant District Attorney had requested—he said, 'This is what you should do.'" A few moments later, appellant Marmon testified: "I went by what the Assistant District Attorney said. That is all I can tell you, is what the Assistant D.A. had said at the hearing. And I believe that the Assistant D.A.'s are at these hearings to guide the magistrate that don't know." The District Attorney then further cross-examined appellant Marmon to try to bring out that she, in fact, did not necessarily follow the assistant district attorneys' recommendations.

Thus, a key question in the entire case was Mrs. Marmon's reason for instructing the police officers to hold Crittenden and then later discharging him. The Commonwealth contended her reason was to enable her to extort a bribe of $100. Appellant Marmon tried to explain it away by saying "I followed with whatever they had asked me to do", referring to advice from assistant district attorneys.

In the factual context of this case, it became crucial to show that appellant Marmon frequently disagreed with assistant district attorneys. That fact would show that her instruction to the police to hold Crittenden could not be explained in terms of following the assistant district attorneys' recommendations, but her action was motivated by the bribe.

To prove that appellant Marmon did not follow "with whatever they [assistant district attorneys] had asked me to do," the district attorney properly introduced into evidence numerous cases where appellant Marmon had acted directly contrary to what the assistant district attorneys had requested. The Commonwealth did not seek to introduce into evidence the evi-

dence in those cases in question, but sought only to introduce into evidence the narrower fact that appellant Marmon acted contrary to the assistant district attorneys' requests which showed her guilty state of mind and proved her defense was fabricated.

The Commonwealth also properly offered rebuttal testimony to contradict appellant Marmon's assertion that she never held anyone for more than $300 bail for court on a numbers case. This testimony was offered by appellant Marmon to show that Welsh could not possibly have any basis for saying that she had demanded $100 or $1,000 bail for court. On direct examination appellant Marmon's counsel asked the question and she answered as follows: "Q. Did you on that morning say to Mr. Welsh, 'It's a hundred dollars or a thousand dollars bail for court'? A. No, sir. Now, I would like to tell you something. This was a numbers case and I believe all the while I was on the bench no numbers case was ever held over $300 bail for court. So I don't know where he would ever get a figure like $1,000 bail. Number cases to me were never, never really that important that you would hold them in high bail." In rebuttal, the Commonwealth proved that there were numerous cases where appellant Marmon had held defendants in numbers cases for more than $300 bail for court.

The rebuttal testimony was properly admitted in evidence to impeach appellant Marmon's credibility on an important and material issue in this case. See *Flowers v. Green*, 420 Pa. 481, 218 A. 2d 219; *Com. v. Turner*, 371 Pa. 417, 88 A. 2d 915 (1952); *Com. v. Truitt*, 369 Pa. 72, 85 A. 2d 425 (1951); *Com. v. Duca*, 312 Pa. 101, 165 A. 825 (1933); *Blauvelt v. Delaware, L. & W. R. Co.*, 206 Pa. 141, 55 A. 857 (1903); *Com. v. Weber*, 167 Pa. 153, 31 A. 481 (1895); *Wright v. Cumpsty*, 41 Pa. 102 (1861); *Com. v. Kettering*, 180 Pa. Superior Ct. 247, 119 A. 2d 580 (1956); *Com. v. Graham*,

170 Pa. Superior Ct. 343, 85 A. 2d 632 (1952); *Com. v. Shultz*, 115 Pa. Superior Ct. 177, 175 A. 288 (1934); *Com. v. Benedict*, 114 Pa. Superior Ct. 183, 173 A. 850 (1934); *Com. v. Bell*, 88 Pa. Superior Ct. 216 (1926), affirmed 288 Pa. 29, 135 A. 645.

On the question of rebuttal evidence, the court below carefully instructed the jury on its limited purpose as follows: "Members of the jury, I am quite certain you realize that this testimony is not for the purpose of establishing some wrongful act that is not involved in this case, it is for the purpose of contradicting a portion of her testimony, and on that basis if you believe it does then it does go to her credibility and the weight that you are going to attach to her testimony."

The evidence was sufficient to support the verdicts. I would affirm the judgments of sentence entered below.

WRIGHT and SPAULDING, JJ., join in this dissenting opinion.