Day, J.
 

 A consideration of the errors complained of herein requires the determination of two points. First, whether the record discloses that the correct rule has been applied as to the evidence suffic
 
 *429
 
 ient to support the judgment of conviction of subornation of perjury; and, second, whether there is sufficient evidence of a substantive nature to sustain the verdict of the jury that an oath was duly and legally administered to the witness Albert Dean, whose testimony is claimed to have been suborned.
 

 There is a distinction between the crime of perjury and that of subornation of perjury; and we deem the rule, that under an indictment for perjury the defendant cannot be convicted on the uncorroborated testimony of a single witness, not applicable to a case of subornation of perjury. In the latter offense the defendant is not convicted for a crime occurring while he is under oath and testifying. “The offense that he commits is virtually consummated before the witness gives his testimony. He is not charged with the giving of false testimony. He does not commit his crime while performing any necessary function in the progress of a trial. Why then should his conviction require greater proof than in convicting for theft? We do not think it does.”
 
 State
 
 v.
 
 Richardson,
 
 248 Mo., 563, 154 S. W., 735, 44 L. R. A., (N. S.), 307; 30 Cyc., 1454;
 
 State of Iowa
 
 v.
 
 Waddle,
 
 100 Iowa, 57, 69 N. W., 279;
 
 Boren
 
 v.
 
 United States,
 
 (C. C. A.), 144 F., 801.
 

 In
 
 State
 
 v.
 
 Renswich,
 
 85 Minn., 19, 88 N. W., 22, it is said:
 

 “If, in the prosecution of a party for subornation of perjury, it is sought to establish the fact that perjury was committed by the person suborned, his testimony must be corroborated as to such fact. But the alleged fact that he was induced to com
 
 *430
 
 mit the crime by the accused may be established by his uncorroborated testimony if it satisfies the jury beyond a reasonable doubt.”
 

 . With the foregoing statement of the rule as deduced from the adjudicated cases, we have examined the record and find that the same discloses that Dean went to court at Ruskin’s instigation and told the story which Ruskin asked him to relate, which, in substance, was that:
 

 Dean “was supposed to be going up Fleet [a street], supposed to be a fight in the store when I was going up, * *
 
 *
 
 and I was in the car then holding Mrs. Paladino’s baby. * * * While she was looking in the window, she was supposed to see a fight in there, supposed to holler to me, ‘Albert, they are having a fight in here,’ and I set the baby down and jumped out of the car, I was supposed to do that. * * * And, Mrs. Kusby and Mr. Kusby and Sogg, they was supposed to run out, and he was supposed to come out back of them, and holler, ‘They killed my wife, they killed my wife,’ and he had a shoe stretcher in his hand, supposed to have; then Mrs. Paladino was supposed to go in there and bathe her face.
 
 * * *
 
 He told me he was going to sue Kusbys, and after he sued them he said that he would make it good for me, see I got my wages. He said not to be afraid. He said he had the judge and everything fixed. He couldn’t lose.”
 

 Dean went to court where Ruskin pointed out Mrs. Kusby to him. Upon the witness stand in municipal court Dean related the story Ruskin had told bim to tell. Dean in the .case at bar testifies that the fact was he was not there at Ruskin’s
 
 *431
 
 store that day, but was working at the plant of the Cleveland Builders’ Supply Company, which was some two or three miles away; that he started to work between 10 and 11 o’clock, with one Joe Philkowski, working six or seven hours as a sand molder; that he could not leave his work for longer than five minutes at a time; that he never saw Buskin again, but through Mrs. Paladino received $13 from Buskin. Dean is corroborated in his testimony by the witness Joe Philkowski, who testified he went to work with Dean that day about 10 o’clock, arriving at the plant about 10:30 and worked six hours. Philkowski testifies that Dean did not leave the job that day and that he went home with him between 5:30 and 6 p. m. Dean is further corroborated by the testimony of J. E. Dempsey, a timekeeper of the Cleveland Builders’ Supply Company for fifteen years, who testifies that both Dean and Philkowski worked a so-called full day on April 15th, but that he had no exaot. record of the exact time when they started or stopped. The witness Mrs. Geraldine. Paladino, with whom Dean boarded, also corroborates his testimony; it appearing in answer to a question as to what was said by Buskin relative to the proposed testimony which he wished Mrs. Paladino to give concerning the same matter, that Mrs, Paladino answered:
 

 “Why, the time Mr. Buskin came to our house he came for witnesses, and we were supposed to see a fight on the 15th day of April at his shoe store at the hour from 11 to 12; that I was supposed to be down there looking at—he had a sale in the window, and I was looking at the shoes, and
 
 *432
 
 at that time, why, I was to see a fight, them three people were in there and they were fighting, that as I say, as I was looking in the window, in the door, and to holler back to Albert, ‘There is a fight.’ * * * Albert was sitting in the car with my youngest baby, and I called to him and he put the baby down in the car, and he comes running up. * * * He told us if we would do this he would pay us, he would put us on easy street. In the meantime we talked over this what was supposed to happen until we had it all down by heart. He says, ‘Now, get it down pat; you don’t have to worry, I got the judge fixed, all you do is get up and say it; I will give you so much money, you know, put you on easy street,’ and in the meantime he gave my husband four or five pairs of shoes
 

 This story, as related by Mrs. Paladino in municipal court, she testifies in the case at bar, was false, and that she was not in front of the Ruskin store about noon of April 15th, etc., and denies the story in toto. Later the witness Mrs. Paladino testifies to a conversation with Ruskin, wherein she says:
 

 “Why, we got into an argument over the check.
 

 “Q. What check was that? A. Well, he didn’t want to pay me anything for my time at that time, but gave Albert his money.
 

 “Q. Which was how much? A. Thirteen dollars according to the check that he paid us. ’ ’
 

 In the testimony on the part of Ruskin these charges are denied.
 

 Other excerpts from the record and other details might be given, and, while it is suggested that these state witnesses were unworthy of belief, yet
 
 *433
 
 we feel that this was purely a question for the jury to determine, and have reached the conclusion that there is ample corroborative testimony of both the perjury by Albert Dean and the subornation of perjury by the defendant Sam Buskin, and that the jury was fully justified in reaching the conclusion that it did.
 

 The second point for consideration is whether the record discloses sufficient to enable the jury to find beyond the existence of a reasonable doubt that the testimony of Albert Dean in the municipal court in the city of Cleveland, in the assault and battery case against Michael Kusby and Katherine Kusby, was given under oath, duly and legally administered.
 

 An examination of the testimony of Dean in that cause shows conclusively that he knew that he was testifying in a court of justice; that the subject of the inquiry was the guilt of the accused of the offense of assault and battery charged in that court; that he was promised a subpoena by Buskin; that he, together with the other witnesses, raised the hand as in the formal taking of an oath; that the deputy clerk (a lame man, whose voice was not strong) uttered certain words which Dean did not hear clearly enough to understand. Dean, however, in due time took the witness stand and testified in the case as he claims Buskin had directed him to do.
 

 We think there is no doubt but that the jury in the subornation of perjury case might well reach the conclusion that Dean in the assault and battery case was sworn before an officer duly authorized to administer oaths, and that to every apparent con
 
 *434
 
 elusion Dean by the unequivocal and present act of raising his right hand consciously took upon himself the obligation of an oath. This testimony of Dean as to his own outward act in putting up his hand before an officer of the court duly authorized to administer oaths, and his conduct in the court in which he testified, were both matters which the jury might properly consider in determining whether Dean understood the nature of what he was doing and his purpose in raising his hand in open court before a deputy clerk thereof in the formality of taking a legal and binding oath. Dean was 18 years of age at the time of the alleged subornation. He was doing a man’s work at the brick plant of the Cleveland Builders’ Supply Company. His testimony in the instant case shows him to have been an intelligent witness, fully cognizant of the court procedure that had taken place in the various trials incident to the cause.
 

 From all the facts and circumstances surrounding the alleged administering of the oath, we think the conclusion reached by the jury upon that issue of fact between the state and the defendant Ruskin was such that it should not be disturbed.
 

 29 Cyc., 1303: “Oaths are to be administered to all persons according to their own opinions and as it most affects their consciences. The uplifting of the hand is formal enough to make an oath legal and binding.”
 

 21 Euling Case Law, 257: “To make a valid oath on the falsity of which perjury may be charged there must be in some form, in the presence of an officer authorized to administer it, an unequivocal and present act, by which the affiant consciously
 
 *435
 
 takes on himself the obligation of an oath. The underlying principle evidently is that whenever the attention of the person who comes up to swear is called to the fact that the statement is not a mere asseveration, but must be sworn to, and in recognition of this he is asked to do some corporal act, and does it, this is a statement under oath—and this, without kissing any book, or raising his hand, or doing any religious act.”
 
 Ram
 
 v.
 
 King,
 
 51 Can. Sup. Ct., 392, 39 Ann. Cas., 494;
 
 Curry
 
 v.
 
 Rex,
 
 48 Can. Sup. Ct., 532, 32 Ann. Cas., 591;
 
 State
 
 v.
 
 Day,
 
 108 Minn., 121, 121 N. W., 611; 85 Am. Dec., 489, note;
 
 Cronh
 
 v.
 
 People,
 
 131 Ill., 56, 22 N. E., 862.
 

 Entertaining the view that the record discloses that there is sufficient corroborative proof to justify the conclusion of the jury as to the perjury of Dean and the subornation of perjury by the defendant in error Buskin, that said Dean gave such testimony under oath duly and legally administered, and that the jury’s conclusion in so finding is sustained by the proper degree of evidence, it follows that the judgment of the Court of Appeals must be reversed and that of the common pleas affirmed.
 

 Judgment reversed. Judgment of court of common pleas affirmed.
 

 Marshall, C. J., Allen, Kinkade, Bobinson-, Jones and Matthias, JJ., concur.