THE STATE v. J. W. TULL, Appellant.—62 S. W. (2d) 389.

Division Two, June 24, 1933.

*McKay & Peal* and *Walker & Billings* for appellant.

*Stratton Shartel*, Attorney-General, and *Julius Meyerhardt*, Assistant Attorney-General, for respondent.

COOLEY, C.—By an information filed in the Circuit Court of Dunklin County defendant and Lavert Hamlin were charged with grand larceny, the information alleging the theft of a cultivator of the value of $35. A severance was granted and defendant Tull was tried alone, resulting in his conviction and sentence to two years' imprisonment in the penitentiary.

According to the State's evidence the cultivator was left in the evening of April 13, 1931, in a lane that led to and connected with a graveled highway, from whence it was stolen that night. The person who moved it pulled it by hand to a point on the highway where it had apparently been attached to an automobile. On the highway some two miles from that point and near an uninhabited house it had been taken apart. Between nine and ten o'clock that night it and an automobile were observed in the highway near said house. The license number of the car was taken by a witness who observed it there and the ownership of the car was traced to this defendant who lived in Pemiscot County. The Sheriff of Dunklin County with other officers went to a farm owned by defendant but occupied by his tenants where the cultivator was found and identified. It had been reassembled. Defendant was there. He admitted ownership of the automobile seen the night before at the place above mentioned and that he had been in Dunklin County that night and had procured the cultivator there. He claimed he had bought it from a man unknown to him for $15. The State's evidence showed the value of the cultivator to be in excess of $30.

Defendant testified at the trial, as did his companion Hamlin whom he called as a witness. According to their testimony defendant, who was a deputy constable, had been looking for a man whom he wanted to arrest. At a filling station they met and fell into conversation with a man who, defendant later learned, was Charles Dinkins and in the conversation Dinkins said he had a cultivator for sale. After some bargaining with Dinkins defendant agreed to buy it for $15 and later that night, after further unavailing search for the man they were seeking, defendant and Hamlin came back that way, picked up Dinkins and with him drove to a point in the highway where Dinkins told him to stop. Dinkins left the car and in a short time returned pulling the cultivator. The three men then proceeded to the vacant house where Dinkins procured a wrench and took the cultivator apart and it was loaded into defendant's car. Defendant paid him the $15 agreed upon and so far as the evidence shows left him at that spot. It is unnecessary to give a detailed statement of the evidence. It was sufficient to take the case to the jury.

I. Appellant's chief contention is that he was not given a valid preliminary examination prior to the filing of the information herein because, as he claims, the complaint upon which the preliminary examination was held was not sworn to. He filed a timely plea in abatement in the circuit court raising that issue, which plea the court, after hearing evidence thereon, overruled.

The facts necessary to an understanding of this contention as developed at the hearing are briefly these: A day or so after the larceny

the prosecuting attorney, Mr. Ford, having learned thereof and of the facts connecting defendant and Hamlin therewith, prepared in his office a written complaint charging the defendant and Hamlin with the larceny. He intended to file it with M. F. Foster, a justice of the peace before whom he designed to have the preliminary examination. He and Foster had previously conferred about the matter and Foster understood the complaint was to be filed with him. When Mr. Ford had prepared the complaint he signed it and left it lying on his desk while he went to look for Foster, whom he met coming toward his (Ford's) office. Ford told the justice he had drawn and signed the complaint and left it on his desk and desired to be sworn to it and wanted the justice to sign it and sign warrants. The justice said he would do so and went to Ford's office, found the complaint there in care of the stenographer, affixed his certificate and signature thereto certifying the complaint to have been sworn to before him, and apparently left it in Ford's office for the time being. Ford did not go into his office with Foster and was not present when the latter affixed his signature. Just how soon thereafter the complaint was taken to the justice's office is not shown but it was there on the day originally set for the preliminary. Ford testified: "I wrote said affidavit and warrant on this particular day and made it returnable to the Justice Court of M. F. Foster. I signed the affidavit and left it on my desk and after I went downstairs I met M. F. Foster and stated that I had made and executed and signed an affidavit charging Tull and Hamlin with grand larceny and I desired to be sworn and asked that he sign it and sign warrants. The Judge in reply stated that he would." He further said on cross-examination that he "felt that he was sworn;" that he did not hold up his hand and there was no formal administering of an oath, "that is just the way it happened." Foster was called as a witness by defendant. His testimony substantially corroborated that of Ford as to what actually occurred relative to the signing and verifying of the complaint except that his testimony is somewhat vague as to whether or not he actually "swore" Mr. Ford to the complaint. He said: "I don't remember swearing him. Q. He didn't swear to you as to the truth of that complaint? A. Not that I know of." In answer to questions on cross-examination he testified to what actually occurred substantially as Ford testified. "Redirect: Q. But did you swear him to it? A. I don't remember." Here there was an objection that that involved a legal question, which was overruled. "Q. You know you didn't, don't you? A. I know he was not at that time. If he was afterwards I don't remember it."

The complaint introduced in evidence by defendant is regular on its face and sufficiently charges the offense. It recites: "Before me, M. F. Foster, a justice of the peace within and for the county afore-

said, personally came Elbert L. Ford, prosecuting attorney, who, being duly sworn according to law, deposes and says,'' etc. It closes with: ''Sworn to and subscribed before me this the 15 day of April, A. D. 1931. M. F. Foster, J. P.''

Defendant filed with Justice Foster a plea in abatement raising the question of verification of the complaint later presented in the circuit court by his plea filed there. The justice overruled it. Defendant then took a change of venue to another justice before whom the preliminary examination was held. He urged the same point before that magistrate and again was overruled. It is thus apparent that he did not waive his point nor waive a preliminary. A preliminary hearing was held, defendant being bound over to the circuit court, and a transcript thereof was duly certified to the clerk of the circuit court before the information herein was filed.

In State v. Nichols, 330 Mo. 114, 49 S. W. (2d) 14, we held that under our statute there cannot be a valid preliminary examination except upon a written complaint verified by oath. In that case the justice's transcript and the evidence failed to show that a written complaint had been filed with the justice. In the instant case the question we have to determine is whether the complaint filed, which on its face is in all respects sufficient, was in fact sworn to as it purports to have been.

Since the circuit court had to determine the probative value of the oral evidence offered on the plea in abatement and overruled the plea, we will assume that it resolved in favor of the State whatever conflicts there may have been in such evidence. There is after all little if any real conflict. Some apparent conflict between the testimony of Ford and Foster, as well as the apparent contradictions and uncertainty of the latter's testimony, is doubtless due to his uncertainty as to the legal effect of what had transpired rather than to any disagreement with Ford as to the actual facts. On the evidence as a whole the court was justified in accepting Mr. Ford's version of the facts.

Appellant relies chiefly upon State v. Privitt, 327 Mo. 1194, 39 S. W. (2d) 755. That case is distinguishable from the instant case in its facts. In that case the validity of a search warrant was involved. It had been issued upon the petition of the prosecuting attorney, which the law required to be verified. It was shown by the evidence that the prosecuting attorney had signed the petition and had then sent it by a deputy sheriff to a justice of the peace who thereupon attested it and issued the search warrant but without at any time having any communication in relation thereto with the prosecuting attorney, the purported affiant. We held on those facts that the petition had not been legally verified. In the instant case the prosecuting attorney prepared and signed the complaint and

started out to find the justice for the purpose of making oath to it before the latter. Meeting the justice outside his office he informed him that he had so prepared and signed the complaint and desired to be sworn thereto and that the justice attest it. The justice said he would and the evidence indicates that at once he proceeded to the prosecuting attorney's office, found the complaint where he had been directed to look for it and attested it. He thereafter treated it as having been sworn to and in acting upon it as a properly sworn complaint showed that he understood and considered that it had been sworn to. The prosecuting attorney testified that he "felt he was sworn." It seems clear from his testimony that by his act in signing the complaint and his statement to the justice immediately thereafter he meant to take upon himself the obligation of making oath to it and that the justice so understood him is shown by his own official acts.

■ In the Privitt case we said that "by uniform decisions of our courts and by our statutes, no set formula is required to constitute an oath or to impose the obligation of an oath;" and, quoting from 2 Corpus Juris, page 338, section 49: ". . . no particular ceremony is necessary, and it is only required that something be done in the presence of the officer which is understood by both the officer and the affiant to constitute the act of swearing." There must be some unequivocal act by which the affiant consciously takes upon himself the obligation of an oath. [48 C. J. p. 855, sec. 77, and see cases in note.] But it need not be evidenced by any set formula. The Minnesota Supreme Court said:

"The particular formality with which an oath is administered has never been regarded in this state as of great importance. The essential thing is that the party taking the oath shall go through some declaration, or formality, before the officer which indicates to him that the applicant consciously asserts or affirms the truth of the fact to which he gives testimony." [State v. Day, 108 Minn. 121, 124, 121 N. W. 611.] For illustrative cases see: State v. Ruskin, 117 Ohio St. 426, 159 N. E. 568, 56 A. L. R. 403; United States v. Millard, 40 Fed. 151, 5 L. R. A. 816; McCain v. Bonner, 122 Ga. 842, 51 S. E. 36; Dunlap v. Clay, 65 Miss: 454, 4 So. 118; State v. Holladay, 120 S. C. 154, 112 S. E. 827; Markey v. State, 47 Fla. 38, 59, 37 So. 53. See, also, for collation of cases, note to Curry v. Rex (Can.), Ann. Cas. 1914B, 591, 595 et seq.

■ If the signing of the complaint in this case by the prosecuting attorney had been done in the presence of the magistrate, accompanied by the words we have set out, or if, with similar language indicating an intent to swear to it, he had handed it to the magistrate already signed and in either case the magistrate had affixed his jurat, there could be no question but that the verification was suf-

ficiently shown. [See State v. McCowan, 331 Mo. 1214, 56 S. W. (2d) 410.] We have been unable to find a case involving the circumstance here shown that the instrument to be verified was not actually present when the act of swearing to it occurred. But under the circumstances shown we think the mere fact that the complaint was not in the immediate presence of affiant and officer should not be held fatal. The affiant told the officer where and what it was, in effect pointed it out to him, so that there could be and was no mistake as to the instrument to which he was making oath.

■ Some contention is made in the plea in abatement that defendant was arrested before the complaint against him was verified, if it was verified, and as to the legality of the arrest. Defendant gave bond for his appearance before the justice at a time fixed. We understand from the evidence that the complaint had been verified when the bond was taken. Defendant appeared pursuant to his bond and again before the justice to whom the case was sent on change of venue and was given a preliminary examination. This point is not briefed by appellant. We deem it without merit.

We hold that under the facts of this case the complaint was legally verified, that defendant was accorded a valid preliminary examination and that his plea in abatement was properly overruled.

■ II. Appellant assigns as error the admission of the testimony of the sheriff and several officers who were with him showing the finding of the cultivator and its identification, on the ground that the sheriff was not armed with a search warrant, wherefore the search of the premises where the cultivator was found was illegal and any evidence thus obtained incompetent. The cultivator was found in a lot or field behind a barn on land which belonged to defendant but at the time, according to his own testimony, was in charge of his tenant. It was not necessary to make a search except, perhaps, to go upon the premises far enough to see behind the barn. When the sheriff arrived he met defendant there and saw the car, which was in sight and had upon it the license number of the one he sought, and which defendant said was his. The sheriff then told him a cultivator had been stolen and asked if it would be all right to search the premises without a warrant. Defendant at first demurred and the sheriff, without then attempting to search, sent two officers to procure a search warrant. While they were gone defendant voluntarily told the sheriff that the men who had gone for the search warrant "had it in for him," but if he, the sheriff, would "go to town with him," he might search without a warrant. The sheriff said he would, whereupon the defendant led the sheriff and the other officers to the cultivator and showed it to them. When the two who had gone for the search warrant returned with it the sheriff told them

160

it was not needed, the cultivator having been found, and it was not used. Defendant filed no motion to suppress evidence before the trial. His objection to the testimony now challenged was made for the first time when it was offered at the trial. Whether or not a search warrant would have been requisite absent defendant's consent to search without it, we need not inquire. We are satisfied that defendant waived the issuance of the search warrant if he was entitled to require it (State v. Lee (Mo.), 11 S. W. (2d) 1044), and in any event the objection to the evidence, coming for the first time when and as it did was properly overruled for another reason. When evidence is offered at the trial and objection that it was obtained by illegal means is then made for the first time, the court will determine only whether the evidence is relevant and competent. It will not pause to determine the collateral question as to how the evidence was obtained. [State v. Owens, 302 Mo. 348, 359, 259 S. W. 100; State v. Grubbs, 316 Mo. 243, 251, 289 S. W. 852 (larceny case); State v. Bunch, 307 Mo. 411, 415, 270 S. W. 282; State v. Zugras, 306 Mo. 492, 496, 267 S. W. 804; State v. Wagner, 311 Mo. 391, 279 S. W. 23, 29 (larceny).]

■ III. Complaint is made of certain questions propounded to defendant on cross-examination as improper because going beyond the scope of his examination in chief. On his direct examination defendant had testified at length and in detail about the circumstances under which he had obtained the cultivator, that the man from whom he bought it was then a stranger to him, and that shortly after his arrest he, in company with one of his attorneys and Hamlin and another man, had gone in search of the man and found and recognized Dinkins. On cross-examination he was asked if he had ever "complained" to any officer "of buying this cultivator from Dinkins." Defendant's objection was overruled and defendant answered: "Upon the advice of my attorney I didn't." The court then said to the prosecuting attorney: "Mr. Ford, nobody could understand that question." After some colloquy between court and counsel the court, over defendant's objection, put this question: "Mr. Tull, after you went to see if you could find this man, what did you do with reference to telling any body you had found him?" Defendant answered: "I showed him to Mr. Billings (his attorney) and he said to wait until trial day and then tell who it was. That is the reason I didn't tell any body." We think the cross-examination was competent. It referred to a subject about which defendant had testified in chief.

"If the defendant in chief in a general way refers to a subject, he may be examined in detail as to that subject. Where he states a fact in relation to his actions, the prosecutor may inquire as to par-

ticular circumstances which would throw light on that fact.'' [State v. Ayres, 314 Mo. 574, 581, 285 S. W. 997, 998.]

In State v. Glazebrook (Mo.), 242 S. W. 928, 931, the court said: "The statute has never been given such a narrow construction as to limit the defendant's cross-examination to a mere categorical review of the matter testified to in the direct examination, but it may extend to any matter referred to or within the fair purview of such examination.'' (Citing cases.)

Complaint is made of the court's failure to reprimand the prosecuting attorney for certain remarks in his closing argument to the jury. Only a short excerpt from the argument is set out in the bill of exceptions. The court in effect sustained defendant's objection to the prosecutor's remark and we cannot see that there was prejudicial error in the failure to reprimand.

The information, verdict and judgment are sufficient and there is sufficient substantial evidence to sustain the verdict. We find no prejudicial error in the record. The judgment of the circuit court is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.