## Commonwealth *v.* Billingsley, Appellant.

Argued December 9, 1946. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Harry A. Estep,* for appellant.

*J. E. Kalson,* Assistant District Attorney, with him *Artemas C. Leslie,* District Attorney, for appellee.

OPINION BY ARNOLD, J., January 17, 1947:

Defendant appeals from a conviction on an indictment charging him with the attempt "to . . . suborn one Leroy C. House to commit . . . perjury, as a witness, in a . . . civil proceeding [an action of trespass for personal injuries, fully identified] . . . in the Court of Common Pleas in and for Allegheny County, . . .". In the action of trespass, the judicial proceeding in-

volved, the plaintiff alleged that she was a business invitee in the restaurant of the defendant on April 3, 1941, and that something on the floor caused her foot to slip, whereby she fell and was injured.

The appellant was an investigator and had been requested to inquire whether any other persons had seen the plaintiff's accident. He was a patron of the restaurant in question, learned that House had been an employe thereof, and requested him to come to Billingsley's office in midtown Pittsburgh. They had an interview and House then reported to the plaintiff's attorney that he would testify to various facts concerning the accident. On the same day House was accordingly called as a witness for the plaintiff, and in part testified that he was an employe in the defendant's restaurant on April 3, 1941; that a customer had called his attention to chocolate syrup on the floor and suggested its removal, but that he neglected to do this; and some thirty minutes later he turned his head and saw a woman, apparently injured, being assisted to a chair by the manager.

The day and hour of the occurrences related by House were the day and hour of plaintiff's accident. The evidence of House was material to the inquiry as proof that the cause of the accident was a dangerous condition of which the owner had constructive notice. This testimony was given by him in the afternoon of the trial of the civil action. That night representatives of the defendant showed him payroll records which demonstrated that he was not an employe of the defendant on April 3, 1941, but had commenced to work for it some two weeks later. House admitted this, claiming that he had confused the dates. Upon learning this, plaintiff's attorney had Billingsley bring the witness to court the next morning. He was put on the stand and testified that he had got the dates confused and did not see anything transpiring in the defendant's restau-

rant on April 3, 1941, and therefore did not see the accident. The court, on motion, struck from the record all of his first day's testimony. It was recognized that plaintiff's attorney was entirely blameless. House thus withdrew and corrected his former testimony, rendering it harmless; and when stricken from the record it became immaterial. These facts were not seriously questioned, and the appellant only disputed that he had done anything toward procuring, persuading or attempting to suborn the witness, House, to commit perjury.

In the present case House testified for the Commonwealth that Billingsley had made up the whole story concerning which he previously testified; that Billingsley had fixed the date, arranged the recital about the chocolate syrup on the floor and about House seeing the events surrounding the accident on April 3, 1941. House admitted that the original testimony which he gave in the civil case was false, and stated that it was given in accordance with the arrangement with Billingsley, who had instigated him so to testify; that both he and Billingsley knew that it was false; and that his evidence on the second day as to "confusion of dates" was given to protect Billingsley.

As to the fact that Billingsley had procured and instigated him to testify falsely, House was the only witness and was uncorroborated except as to the meeting with Billingsley, which the latter admitted. Appellant therefore alleges that in both perjury and subornation of perjury no conviction can be had upon the testimony of one witness. This is too broad a statement of the rule. The word "perjury" is frequently used as synonymous with "false testimony". But the *crime* of perjury has a number of elements: (a) An oath to tell the truth must be taken by the accused, and (b) administered by legal authority, (c) in a judicial proceeding

(or statutory affidavit). (d) The accused must have testified in such proceeding, and (e) his testimony must be material to the judicial proceeding. (f) The testimony assigned as perjury must be false, and (g) must be given wilfully, and corruptly, and with knowledge of its falsity (or given recklessly), and for the purpose of having it believed. As to none of these elements is there a requirement as to the quantity of proof *except* as to the falsity of the testimony, i. e., the assignment of perjury. As to the falsity and as to it alone, is there a rule that conviction may not be had upon the testimony of one witness.[1] The *falsity* of House's testimony in the civil trial was fully established not only by testimony of House himself, but by other witnesses and many corroborating circumstances. The remaining elements were susceptible of proof by the testimony of one witness.

Subornation of perjury consists of all the elements enumerated in the crime of perjury (committed by the witness alleged to be suborned), and one additional element: that the accused induced, persuaded and in-

---

[1] A most interesting perjury case, on proof by corroborating circumstances, is *Commonwealth v. Rogo*, 71 Pa. Superior Ct. 109. The present Chief Justice tried the case as district attorney, and argued the appeal. The accused was indicted for having falsely testified, for the defendant in a murder case, that the deceased had made a dying declaration to him to the effect that the deceased had been killed with his own firearm. The issue was whether the deceased had made the dying declaration, and *not* whether the deceased had spoken truthfully in that declaration. As to this assignment of perjury the Commonwealth offered proof (as to falsity) of the extreme unlikelihood that deceased would have made such a declaration against his own interest, and showed that the homicide was not committed with the decedent's firearm. The appellant argued that the issue was whether the dying declaration had been made, and not whether its contents were true. The court admitted the evidence of unlikelihood as part of the proof that the declaration had not been made, i.e. falsity.

stigated the suborned witness to commit the crime of perjury. This additional fact (procurement of the witness) does not require proof by more than one witness: *State v. Ruskin* (Ohio), 159 N. E. 568.

The attempt to suborn a prospective witness to commit perjury (the instant indictment) is a common law crime separate and distinct from subornation of perjury. Appellant is correct in stating that in subornation of perjury there must be proof of actual perjury committed by the suborned witness. But as to attempts to suborn one to commit perjury it is unnecessary that the person suborned did testify falsely, or indeed did testify at all. The offense is made out whenever the accused instigates and procures the agreement of the prospective witness to testify falsely. This is true even if thereafter the prospective witness fails to go through with the bargain and refuses to give evidence. It is, of course, a necessary element of the crime that both the accused and the person to be suborned knew that the testimony sought was false, material, and to be used in actual or prospective litigation: 2 Wharton's Criminal Law (12th ed.) §1598; 48 C. J., Perjury, 196; 41 Am. Jur., Perjury, §74. Therefore the fact that House's original testimony was nullified, and stricken from the record, or that House only attempted to commit perjury, does not constitute a defense to the indictment charging Billingsley with the attempt to suborn House to commit perjury.

Appellant argues that his conviction cannot stand because the only evidence of his attempted subornation of House, i.e., his procurement for purposes of perjury, rests on the uncorroborated testimony of an accomplice, to wit, House. There are two answers to this contention. By the weight of authority, while the suborned and the suborner are accomplices *as to the actual perjury,* they are not accomplices as to the procurement or suborning

of the witness to commit perjury, because a suborner cannot be guilty of suborning himself: 2 Wharton's Criminal Law, (12th ed.) §1598, 41 Am. Jur., Perjury, §74; 48 C. J., Perjury, 196; Underhill on Criminal Evidence (4th ed.) §151; *State v. Gleason* (Utah), 40 Pac. 2d 222; *State v. Ruskin* (Ohio), 159 N. E. 568, and Annotations, 56 A. L. R. 407, 412. If the law were otherwise, no suborner could ever be convicted unless his proposal was made in the presence of an earwitness. This simply is not done. The other answer is that the uncorroborated testimony of an accomplice may sustain a conviction: *Commonwealth v. DeMasi*, 234 Pa. 570, 83 A. 430; *Commonwealth v. Elliott*, 292 Pa. 16, 140 A. 537; *Com. of Pa. v. Chrostowski et al.*, 112 Pa. Superior Ct. 466, 171 A. 901; *Commonwealth v. Brown*, 158 Pa. Superior Ct. 226, 44 A. 2d 524. The appellant does not complain of any inadequacy of the charge of the court with regard to the credibility of House, or the caution with which his testimony should be received.

Appellant further alleges that House was not a competent witness because he had admittedly "perjured" himself in the prior proceeding, and therefore must not be believed. This statement also is predicated on the variant meanings of the word "perjure". House did admit that he had testified falsely in the civil trial. But he had not been convicted of the crime of perjury, nor, in fact, even been indicted. Section 322 of The Penal Code of 1939, P. L. 872, 18 P. S. 4322, derived from The Penal Code of 1860, §14, is the only statutory disqualification. The Penal Code of 1860 and The Penal Code of 1939 both contain the clause that *"on conviction* of either offense, [perjury or subornation thereof, the defendant] shall be sentenced [fixing the limits of punishment] . . ., and shall, except as otherwise provided by law, be forever disqualified from being a witness in any matter in controversy." (Emphasis supplied.) One

found guilty of perjury by verdict of a jury, *and unsentenced,* is a competent witness: *Commonwealth v. Miller et al.,* 6 Pa. Superior Ct. 35; and where a witness admits that he committed perjury or pleads guilty thereto, (if unsentenced) he is not disqualified or rendered incompetent: *Commonwealth v. Lewandowski et al.,* 74 Pa. Superior Ct. 512. Only his credibility is affected. The appellant complains of no inadequacy of the court's charge in this respect.

We have said that House gave the only evidence that he was induced and instigated by Billingsley to do as he did, and since the appellant strongly urges that House ought not to be believed because of the latter's grave misconduct, it should be said that this indictment against Billingsley was first tried before Judge O'Toole without a jury. Judge O'Toole was convinced beyond a reasonable doubt by House's testimony, and found Billingsley guilty. A new trial was granted by the court en banc, Judge O'Toole dissenting. The indictment was next tried before Judge Ellenbogen and a jury. That jury was convinced beyond a reasonable doubt by House's testimony and found the defendant guilty. Another new trial was granted and the defendant came before Judge McDonald and a jury in the instant case, and this jury being convinced beyond a reasonable doubt by House's testimony, returned a verdict of guilty; and the court, likewise convinced, refused to disturb the verdict. It cannot be said that this conviction should be set aside on any question of the credibility of House.

The assignments of error are overruled, the judgment of the court below is affirmed, and defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.