## CHARLES WILLIAM TIPTON a/k/a JOHN ROCCO DiROSSI *v.* STATE OF MARYLAND

[No. 3, September Term, 1969.]

*Decided November 17, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*W. Lee Harrison* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *H. Chester Goudy, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Charles William Tipton, a/k/a John Rocco DiRossi, the appellant, was convicted of assault with intent to murder, attempted subornation of perjury, and carrying openly a pistol with intent to injure another, in the Circuit Court for Baltimore County, Judge John N. Maguire presiding without a jury. He was sentenced to concurrent terms of ten years on each of the first two charges and three years on the third charge. He contended in his written brief that all three convictions should be reversed since they were the result of an illegal investigation by a state police officer, but this contention was abandoned at the oral argument. He alleges the assault with intent to murder conviction and the deadly weapon conviction should be reversed because of double jeopary and the attempted subornation of perjury conviction should be reversed because of an insufficiency of evidence.

There was evidence that Trooper Lawrence Ireland of the Maryland State Police Intelligence Unit secured a job as a doorman at a cocktail lounge known as the Joppa Inn in Baltimore County for purposes of conducting an undercover investigation of narcotic traffic at this nightclub. On March 14, 1968, at approximately 9:30 P.M.

Trooper Ireland, still posing as a doorman, observed Paul Nicholas, a former employee, approach Tipton and demand payment of $8. in back wages. An argument ensued but Nicholas left and rejoined his female companion at a table. Ireland observed Tipton walk out the front door of the lounge to his automobile and return carrying a pistol. Tipton, running to the booth where Nicholas was sitting, proceeded to violently pistol-whip him about his head and shoulders. During the struggle, the pistol was knocked from Tipton's hand. Ireland testified that he immediately picked it up, extracted six live cartridges and threw it back on the floor. Tipton then knocked Nicholas to the floor, located the gun where Ireland had thrown it, stood directly over Nicholas with the pistol pointed at his body and pulled the trigger. When the unloaded weapon failed to fire, Tipton again proceeded to pistol-whip Nicholas as the latter attempted to crawl and stumble outside. Outside the cocktail lounge, Tipton again pointed the pistol at Nicholas and yelled "I'll kill you" and thereafter attempted several times to fire the pistol at Nicholas. Nicholas and his female companion managed to escape from the parking lot in their vehicle. On return to the lounge, Tipton commented to Ireland that he could not understand why the gun did not fire and expressed astonishment on discovering the gun was unloaded. Trooper Ireland testified he did not arrest Tipton at that time in order not to expose his identity. Ireland further testified that on March 17, 1968, he was approached by Tipton and advised of a trial to be held at Magistrate's Court over a warrant sworn out by Nicholas charging Tipton with assault with intent to murder, and on a warrant sworn out by Tipton charging Nicholas with assault. Ireland testified that Tipton:

". . .directed me to state in Court that Nicholas came after him with a beer bottle, that there was no gun at any time, that DiRossi never had a gun, that Nicholas was the one that came after him with a beer bottle. He also said,

advised me to testify that he tore my coat and pants pocket on the trousers, and when his sister, Betty Tipton, tried to intervene, that Nicholas struck Betty Tipton. This was the statement that I was, he directed me to make to perjure myself in Court."

In supporting his plea of double jeopardy as to the assault with intent to murder charge and the deadly weapon charge, Tipton produced a certified copy of a docket entry showing the charge against him before the magistrate was "Assault to Wit: Feloniously assaulting with Intent to Murder Paul Louis Nicholas in Violation of Article 27, Sec. 12." Counsel here and below indicated this statement of the charge is correct. Tipton argues that since he entered a plea of not guilty, appeared before the magistrate, and was found "not guilty—complaining witness refused to testify" he was therefore in jeopardy despite the fact the magistrate had no jurisdiction to try him on a charge involving a felony. See Md. Code, Art. 52, § 13. Tipton relies on *Fong Foo v. United States,* 369 U. S. 141, 82 S. Ct. 671, 7 L.Ed.2d 629 wherein the Supreme Court held a clearly erroneous acquittal by a United States District Judge is regarded as final and may not be reviewed, but this principle has no application where a tribunal initially had no jurisdiction at all to hear the case. *Crawford v. State,* 174 Md. 175, 197 A. 866.

Tipton further argues that the language "Assault to Wit: Feloniously assaulting with Intent to Murder Paul Louis Nicholas in Violation of Article 27, Sec. 12" amounts to a charge of assault over which the magistrate did have jurisdiction, Md. Code, Art. 52, § 13, and that under the doctrine of merger he cannot be thereafter tried on the more serious charge. We think this is a strange construction of the language used, and that the Md. Code, Art. 27, § 12, was clearly made. In a similar factual situation the Court of Appeals of Maryland in

*Crawford v. State, supra* held that the charge before the magistrate amounted to a charge of assault with intent to murder and an acquittal by a magistrate was a nullity which would not bar a subsequent conviction for murder by a proper tribunal. We so hold. Compare *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 where the original trial court did have jurisdiction.

Tipton contends he cannot be convicted of attempted subornation of perjury on the uncorroborated testimony of a single witness, and since the trial court did so convict him, he was convicted on insufficient evidence. He relies on *Brown v. State,* 225 Md. 610, 171 A. 2d 456 'where the Court of Appeals adopted the common law rule requiring two witnesses as to perjury, holding the evidence sufficient since the conviction was based upon the testimony of one witness who was corroborated by circumstances proven by independent testimony, which circumstances were of equal weight to an additional witness. We point out, however, the proof required for a perjury conviction does not necessarily apply to a conviction for attempted subornation of perjury.

Tipton alleges that *Commonwealth v. Leitch,* 137 A. 2d 909 (Pa. Super. Ct., 1958) supports the application of the rule requiring two witnesses to attempted subornation of perjury. A careful reading of that case indicates the Pennsylvania Court avoided the question because there were ample witnesses to the criminal act no matter what rule it applied. It quoted with approval an earlier decision as follows:

"In *Com.[monwealth] v. Billingsley,* 160 Pa. Super. 140, 143, 144, 50 A. 2d 703, 704, affirmed 357 Pa. 378, 54 A. 2d 705, Judge Arnold, now Justice Arnold, said:

" 'But the crime of perjury has a number of elements: (a) An oath to tell the truth must be taken by the accused, and (b) administered by legal authority, (c) in a judicial proceeding (or statutory affidavit). (d) The ac-

cused must have testified in such proceeding, and (e) his testimony must be material to the judicial proceeding. (f) The testimony assigned as perjury must be false, and (g) must be given wilfully, and corruptly, and with knowledge of its falsity (or given recklessly), and for the purpose of having it believed. * * *

" 'Subornation of perjury consists of all the elements enumerated in the crime of perjury (committed by the witness alleged to be suborned), and one additional element, that the accused induced, persuaded and instigated the suborned witness to commit the crime of perjury. *This additional fact (procurement of the witness) does not require proof by more than one witness, State v. Ruskin,* 117 Ohio St. 426, 159 N. E. 568, 56 A.L.R. 403. (Italics added)

" 'The attempt to suborn a prospective witness to commit perjury (the instant indictment) is a common law crime separate and distinct from subornation of perjury. Appellant is correct in stating that in subornation of perjury there must be proof of actual perjury committed by the suborned witness. But as to attempts to suborn one to commit perjury it is unnecessary that the person suborned did testify falsely, or indeed did testify at all. The offense is made out whenever the accused instigates and procures the agreement of the prospective witness to testify falsely. This is true even if thereafter the prospective witness fails to go through with the bargain and refuses to give evidence. It is, of course, a necessary element of the crime that both the accused and the person to be suborned knew that the testimony sought was

false, material, and to be used in actual or pro-
spective litigation: * * *.' "

The *Billingsley* Court then held that the two-witness
rule did not apply to the solicitation part of an attempted
subornation of perjury. The question as to the falsity of
the solicited testimony was not before that Court.

It is generally held the two-witness rule rule does not
apply to the solicitation part of subornation. *Culwell v.
United States,* 194 F. 2d 808 (5th Cir. 1952); *Doan v.
United States,* 202 F. 2d 674 (9th Cir. 1953); *United
States v. Giddins,* 273 F. 2d 843 (2nd Cir. 1960); *Com-
monwealth v. Fine,* 73 N.E.2d 250 (Mass. 1947); *State
v. Smith,* 190 N. W. 48 (Minn. 1922); *State v. Ruskin,*
159 N. E. 568 (Ohio 1927).

The illustrious Judge Learned Hand in *Cohen v. United
States,* 27 F. 2d 713 (2nd Cir. 1928) held that the two-
witness rule did not apply to the solicitation part of sub-
ornation saying at page 714:

"It is, of course, well settled that the perjury
must be proved by two witnesses or by one
with corroboration, *U. S. v. Wood,* 14 Pet. 430,
10 L.Ed. 527; and this is also true in cases of
subornation, *Hammer v. U. S.,* 271 U. S. 620,
46 S. Ct. 603, 70 L. Ed. 1118."
* * *
"The point now at bar was specifically re-
served in *Hammer v. U. S.,* but, so far as we
can find, has been uniformly ruled in favor of
the prosecution when it has arisen."

There would seem to be no reason to apply the two-wit-
ness rule to the solicitation part of the attempt.

The precise question as to the application of the two-
witness rule to the falsity of the solicited testimony in
attempted subornation has been directly involved in few
cases. In *State v. Waddle,* 69 N. W. 279 (Iowa 1896), it
was held that the two-witness rule did not apply to any
part of attempted subornation of perjury. The Court
reasoned that since the false oath was not given, there

was no oath against oath which it stated to be the common law basis for requiring two witnesses to support a perjury conviction. In other words, the Court indicated that the two-witness rule as to perjury convictions was designed to prevent convictions based solely on the testimony of a recanted perjured witness. To the same effect see *State v. Powers,* 239 Iowa 430, 30 N.W.2d 476 (1947), *State v. Richardson,* 154 S. W. 735 (Mo. 1913), *State v. Bissell,* 170 A. 102 (Vt. 1934). Under the express language of its statute, California is contrary. See cases collected, 51 A.L.R.2d 961. In *Shipp v. State,* 196 S. W. 840 (Texas 1917) the Court held that if the witnesses were found by the jury to have been accomplices in the attempt to suborn perjury, then the falsity of the solicited testimony must be corroborated under Texas statutes.

The Supreme Court in *Weiler v. United States,* 323 U. S. 606, 65 S. Ct. 548, 89 L. Ed. 495 unanimously rejected an argument the two-witness rule as to perjury was outmoded and should be abolished on the basis of the desirability of protecting honest witnesses from spiteful retaliation by unfounded perjury prosecutions.

In *Cohen v. United States, supra,* the Court said:

> "The doctrine itself has indeed a rational basis when applied to mere recantations, though it must be owned that, if extended to the oath of another than the perjured witness, it is hard to justify in a court of common law."

Whatever we conceive as the basis for the two-witness rule, there is no reason to extend it to the present case. There was no perjury given; thus, the conviction is not based solely on the testimony of an admitted perjurer. In the absence of any testimony at a prior trial, there is no reason to protect an innocent witness from false charges. Since the record shows no evidence Trooper Ireland intended to commit perjury, we do not face the question as to whether or not he was an accomplice. This State permits the testimony of one witness to

support convictions for the most serious crimes *e.g.* murder, *Rasnick v. State,* 7 Md. App. 564, 256 A. 2d 543; rape, *Charles v. State,* 4 Md. App. 110, 241 A. 2d 435; and armed robbery, *Carroll v. State,* 3 Md. App. 50, 237 A. 2d 535. In the absence of binding authority, we perceive no reason to apply the two-witness rule to any part of attempted subornation of perjury under the facts of the case at bar.

It was suggested that since the magistrate's trial was void the conviction for attempted subornation of perjury was improper under the rule cited in 3 Wharton, *Criminal Law and Procedure,* § 1321 at 689 (12th Edition):

> "The decisions, however, are in harmony in holding that in order to constitute the offense, [of subornation of perjury] the act of the accused must be such that it would have resulted in subornation of perjury on his part and perjury on the part of the person attempted to be suborned, if that person had committed the act which the accused endeavored to have him perform. An unsuccessful attempt to do that which is not a crime when effectuated cannot be held to be an attempt to commit the crime specified."

Although a trial before a magistrate under the warrant charging assault with intent to murder is completely null and void, it must not be overlooked that at the same time it was intended that the assault charge by Tipton against Paul Nicholas would also be tried. Since simple assault was clearly within the jurisdiction of the magistrate under the authorities hereinbefore cited, there could be perjury at such a proceeding. We need not consider the more complicated problem as to the power of the magistrate to conduct a preliminary hearing on a charge of assault with intent to murder and the effect of his improper entry of a not guilty verdict instead of simply a refusal to hold the accused for the action of the grand jury.

*Judgments affirmed; appellant*
*to pay costs.*