## SALLIE MAE HARRIS *v.* STATE OF MARYLAND

[No. 777, September Term, 1974.]

*Decided July 24, 1975.*

The cause was argued before MORTON, THOMPSON and POWERS, JJ.

*William H. Murphy, Jr.,* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Barbara Daly, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

Powers, J., delivered the opinion of the Court.

Sallie Mae Harris obtained monetary assistance from the Department of Social Services of the City of Baltimore from 1 June 1970 to 23 July 1973, in the aggregate amount of $5,937.50. An indictment returned on 30 November 1973 charged, in the first count, that she unlawfully and knowingly obtained the money by a false pretense with intent to defraud, in violation of Code, Art. 27, § 140. The second count charged that she obtained the money by means of a wilfully false statement and representation, in violation of Art. 27, § 230A. A third count charged that she obtained the money by failing to disclose a change in financial condition.

A separate indictment returned at the same time charged that on 1 June 1970 Mrs. Harris made false statements in an application for assistance to the Department of Social Services of the City of Baltimore; the making of the statements being punishable as perjury under Code, Art. 88A, § 62; the false statement being that she stated that she was unemployed at the time the application was made.

All charges were tried in the Criminal Court of Baltimore before Judge Paul A. Dorf, without a jury, on 27 and 28 March 1974. Mrs. Harris was found guilty of the perjury charge, and was found guilty generally of all charges in the indictment for false pretenses. Thereafter, on 11 June 1974, sentences were imposed. This appeal questions the sufficiency of the evidence to convict the appellant as to each of the charges, and also contends that the separate conviction of perjury should be vacated because the charge of perjury merged with the charge of false pretenses.

The relevant part of Art. 27, § 140, says:

"Any person who shall by any false pretense obtain from any other person any chattel, money or valuable security, with intent to defraud any person of the same, shall be guilty of a misdemeanor . . ."

The welfare fraud offense, Art. 27, § 230A, then said:

"Whoever knowingly obtains, or attempts to

obtain, or aids, or abets any person to obtain by means of a wilfully false statement or representation, or by knowingly failing to disclose to the welfare agency a change in household or financial condition, or by impersonation, or other fraudulent device, public assistance to which he is not entitled or assistance greater than that to which he is justly entitled, shall, upon conviction, be deemed guilty of a misdemeanor . . ."

The charge of perjury was based upon the specific acts proscribed by Art. 88A, § 62, which at that time said:

"Every application for monies or other assistance under any program of the local departments of social services, whether under this or any other article in this Code, shall be in writing and signed by the applicant. Any person who in making and signing such an application makes a false or fraudulent statement with intent to obtain any assistance is guilty of perjury and upon conviction therefor is subject to the penalties provided by law for perjury."

There was evidence of a series of applications by Mrs. Harris to the Department of Social Services for periodic reconsideration of her eligibility for public assistance. A case worker who handled eligibility explained that their practice required reconsideration every six months, by the filing of an application "just about the same as the original". The case worker identified seven reconsideration applications filed by Mrs. Harris from October 1969 to January 1973, and said that Mrs. Harris had first applied for assistance in 1963. The applications were received in evidence. Some or all of them contained an excerpt from Code, Art. 88A, § 62, printing that part of the section which defined as perjury the making, in the signed application, of a false or fraudulent statement with intent to obtain any assistance.

Immediately following the excerpt from the statute, and over the signature of Mrs. Harris was the statement, "I

hereby declare, that to the best of my knowledge and belief, the information on this application for financial assistance is true, correct and complete."

Some 37 checks issued by the Department of Social Services payable to Mrs. Harris were received in evidence. Their dates covered the period from 1 June 1970 to 23 July 1973. On the back of each, under the endorsement of Mrs. Harris was this printed statement:

"By accepting this check I claim the truth of the assistance application and all changes in my situation have been reported to the Dept. of Social Services."

It may fairly be said that in all of the applications Mrs. Harris stated that she had no assets, no earnings, no income, no property, no automobiles, and was not employed. She said that she rented the premises where she lived.

At the trial a number of stipulations were entered into covering what would be the testimony of various witnesses, if they were called. The evidence thus stipulated showed that on 7 July 1973 Mrs. Harris reported to the police that her 1973 Cadillac had been stolen, and she gave the police a description of the car; that a salesman for the Chesapeake Cadillac Company, on 11 May 1973, sold a new 1973 Cadillac to Sallie Mae Harris, and in the course of the transaction she stated to him that she got her income from a grocery store; that she traded in a 1967 Oldsmobile on the Cadillac and was allowed $1,073.16 on the Oldsmobile, and that, in addition, she made a cash payment of $1,100.00; that another representative of Chesapeake Cadillac took from Mrs. Harris a credit application in which she stated that she was self employed at Whitaker's Grocery Store and had an income of $1,200.00 a month; that the automobile loan manager of Mercantile Safe Deposit and Trust Company handled Mrs. Harris's loan application in connection with her purchase of the Cadillac and that the credit extended to her by the bank totaled $6,683.58, payable in 42 monthly payments of $151.99; that an assistant sales loan officer for First National Bank of Maryland was familiar with Sallie Mae

Harris through loans she carried at the bank, where she had had loans in the past, specifically an automobile loan in April 1971 on a 1971 Ford LTD Brougham, which loan was extended on the basis of a credit application from Mrs. Harris in which she stated that she was and had been for seven and one half years self employed at Whitaker's Confectionery Store and that she earned $600.00 a month and also received $200.00 per month for room and board.

It was also stipulated that the records of the Department of Motor Vehicles showed the ownership by Mrs. Harris of several automobiles, including a 1971 Pontiac not already mentioned; that in an unrelated personal injury suit in the Superior Court of Baltimore City in which Sallie Mae Harris was a plaintiff, she stated in a sworn answer to an interrogatory that her income reported on her Federal tax returns was for 1971 — $8,000, for 1970 — $7,500, for 1969 — $6,700, for 1968 — $6,000, for 1967 — $5,200; that in a deposition given by Sallie Mae Harris in that case she stated, under oath, that she was self employed at Whitaker's Grocery and that she worked there every day.

Mrs. Harris admitted that she had represented to a bank in a loan application that she owned the house where she lived, that she had paid $10,000 for it and owed a balance of $4,000, and that it was worth $15,000. She said, however, that she lied to the bank about that.

The State called as a witness an employee of Royal Crown Cola Company, who testified that he serviced Whitaker's Grocery Store for about two years. He said that most of the time that he went there, there were two women who worked there. He identified Mrs. Harris as one of them. He did not know whether they owned the store, but he knew that they worked there and paid him for the beverages he delivered.

The appellant testified in her own defense. She said that all of the statements she had made to the Department of Social Services were true. She testified that she lied in the statements she made in connection with the purchase of automobiles, and lied on the applications for bank credit in connection with those purchases. She said that she lied in her answers to interrogatories and in her deposition given in

the personal injury suit. She said that two of the automobiles actually belonged to her son, and one of them to her daughter, but that she had registered them in her name because the son and the daughter had no credit. The son had been employed at the Bethlehem Steel Corporation for 9 years and was earning $12,000 a year. His wife was employed and earned $7,000 a year. The daughter was 24 years old, and was employed by the Telephone Company.

Appellant contends that the evidence was not sufficient to support any of the convictions. She argues that each charge required proof that she lied *to the Department of Social Services*, and not merely that she lied to somebody. She appears to concede that the proof shows that she lied, either to the Department or to others, but she says that the proof fails to show which statements were false, and which were true. She says that the proof must affirmatively show that in fact she had assets, income, or earnings, and that it is not enough to show that she made contradictory statements of those facts. She says that the Contradictory Statements law, Code, Art. 27, § 437, is not applicable.

We agree that the proof must show directly, or circumstantially, or support a rational inference, *Metz v. State*, 9 Md. App. 15, 262 A. 2d 331 (1970), that Mrs. Harris lied to the Department of Social Services. We agree that Art. 27, § 437, is not applicable, if for no other reason, because she was not charged under that section. We conclude, however, that the required showing was made and that the evidence was sufficient to support the findings of guilt. We shall affirm the judgments.

That material statements were made by the appellant to the Department of Social Services was proved by conceded documentary evidence—her signed applications. If there was evidence from which the trier of the facts could properly find or infer that the statements were false, then the evidence was sufficient to support the convictions.

Questions of weight and credibility were for the trial judge. We may not set aside his judgment on the evidence unless it was clearly erroneous. Maryland Rule 1086.

The stipulated evidence that the appellant had made

numerous contrary statements, oral and written, to others was substantive evidence of the falsity of her statements to the Department of Social Services.

In a case which involved the question of whether one Milton Smith, a party defendant, was the driver of a motor vehicle involved, the Court of Appeals, in *Smith v. Branscome*, 251 Md. 582, 248 A. 2d 455 (1968), said, at 588-89:

> "In our opinion, there was legally sufficient evidence which would have supported a finding that Milton was the driver of the Green automobile and this question was properly submitted to the jury. Milton contends that his admission the day after the accident that he was the driver of the Green automobile does not have 'any substantive or independent testimonial value' in that such testimony may only be used to impeach the witness and may not be treated as substantive evidence as an admission against interest. Although Milton's contention would be correct if applied to an ordinary witness in a case, it is not correct when applied to the admissions against interest made by a *party* opponent in a case. Milton was a party of the record to the case and any declaration made by him against his interest is receivable in evidence to prove the truth of the matter admitted by him as a party. As Judge Markell, for the Court, in *Lambros v. Coolahan*, 185 Md. 463, 468, 45 A. 2d 96, 98 (1945), aptly stated:
>
> > ' * * * oral admissions of a party "are universally deemed admissible" and legally sufficient to prove facts admitted. Wigmore, Secs. 1048, 2075.' " [1]

---

1. The term "admission against interest" is considered by most authors to be imprecise. It probably results from a failure to distinguish "admissions" from "declarations against interest", which are prior statements by a non-party, unavailable as a witness, and which must have been against the interest of the declarant when made. An "admission" is any prior statement by a party-opponent, whether he testifies as a witness or not. Whether it was or was not against his interest when made has no bearing upon its admissibility. Presumably, but not necessarily, an

The Court cited *Terry v. O'Neal*, 194 Md. 680, 72 A. 2d 26 (1950), and *Joppy v. Hopkins*, 231 Md. 52, 188 A. 2d 545 (1963), in which the same rule was applied.

In two recent opinions the Court of Appeals has noted the change in the common law rule as to the quantum of proof of perjury. In *Brown v. State*, 225 Md. 610, 171 A. 2d 456 (1961), the Court said, at 616:

> "At common law it was originally held that to warrant a conviction of perjury the falsity had to be shown by direct and positive testimony of two witnesses. 7 Wigmore, *Evidence*, § 2040 (3rd ed. 1940). The rule has been said to be deeply rooted in past centuries having its inception in the Star Chamber. 7 *id.* §§ 2030 and 2044. Perjury was treated as a high misdemeanor which required a greater measure of proof than any other crime known to law, treason alone excepted.
>
> "However, the rule has been relaxed so as to allow a conviction of perjury to stand if there are two witnesses, or one witness corroborated by circumstances proved by independent testimony."

Citing *Brown v. State, supra*, and other authorities, the Court said in *State v. Devers*, 260 Md. 360, 272 A. 2d 794, *cert. denied*, 404 U. S. 824, 30 L.Ed.2d 52, 92 S. Ct. 50 (1971), at 372:

> "Maryland no longer requires that perjury be established by the direct testimony of two witnesses, as was the case at common law. It is enough that there is testimony of one witness and other independent corroborative evidence is of such a nature so as to be of equal weight to that of at least a second witness, thus foreclosing any reasonable hypothesis other than the defendant's guilt."

admission by a party-opponent would not be offered unless it runs counter to his trial position. See 4 Wigmore, Evidence, §§ 1048, 1049 (Chadbourn rev. 1972).

We hold that the requirements of this rule in perjury cases, if it applies,[2] were fully met. The appellant's own prior admissions which evidence the falsity of her welfare applications were amply corroborated by other documentary and testimonial evidence.

Appellant also argues that her conviction of perjury, under Art. 88A, § 62, should be vacated because that crime merged into the false pretenses charge under Art. 27, § 140. To prove the crime of false pretenses, as we said in *Polisher v. State,* 11 Md. App. 555, 276 A. 2d 102, *cert. denied,* 262 Md. 749, *cert. denied,* 404 U. S. 984, 30 L.Ed.2d 368, 92 S. Ct. 449 (1971), there must be proof that the accused obtained a chattel, money, or valuable security from another, but there is no requirement that the misrepresentation be in writing, or under oath. On the contrary, Art. 88A, § 62 requires that the false statement be contained in a written application, signed by the applicant, but does not require that anything of value be obtained by means of the false statement.

Each offense required proof which the other did not. *Henry v. State,* 273 Md. 131, 328 A. 2d 293 (1974); *Parker v. State,* 7 Md. App. 167, 254 A. 2d 381 (1969), *cert. denied,* 256 Md. 747 (1970), *cert. denied,* 402 U. S. 984, 29 L.Ed.2d 150, 91 S. Ct. 1670 (1971). The offenses did not merge.

There was no error.

*Judgments affirmed.*
*Appellant to pay costs.*

---

2. It appears that the two-witness rule developed as a concomitant of common law perjury. For a collection of definitions of perjury at common law see Gatewood v. State, 15 Md. App. 314, 290 A. 2d 551 (1972). We know of no Maryland decision which squarely holds that the same rule applies to other criminal conduct statutorily denominated perjury. In Tipton v. State, 8 Md. App. 91, 258 A. 2d 606 (1969), *cert. denied,* 257 Md. 736 (1970), we held that the rule does not apply to the solicitation part of attempted subornation of perjury. In Brown v. State, *supra,* and State v. Devers, *supra,* the perjury committed or suborned was common law perjury.